**E.I. DU PONT DE NEMOURS AND COMPANY, Conoco Inc., and Sporting Goods Properties, Inc., Plaintiffs,**

v.

**UNITED STATES of America, United States Department of Commerce, United States Department of Defense, United States Department of the Army, United States Department of Energy, United States Department of the Interior, and United States Department of the Navy, Defendants.**

Civil Action No. 97–497 (WJM).

United States District Court,
D. New Jersey.

Dec. 30, 2003.

William H. Hyatt, Jr., Esq., Kirkpatrick & Lockhart LLP, John McGahren, Esq., Latham & Watkins, Newark, NJ, for Plaintiffs.

Thomas L. Sansonetti, Assistant Attorney General, Michael D. Rowe, Scott J. Jordan, David M. Thompson, Eric G. Hostetler, Michele L. Walter, United States Department of Justice, Environmental & Natural Resources Division, Environmental Defense Section, Washington, DC, Christopher J. Christie, United States Attorney, Susan C. Cassell, Anthony J. LaBruna, Assistant United States Attorneys, Newark, NJ, for Defendants.

## MEMORANDUM OPINION

MARTINI, District Judge.

On January 29, 1997, E.I. Du Pont De Nemours (hereinafter "DuPont" or Plaintiffs) and other captioned Plaintiffs brought an action for the recovery of environmental clean-up, removal, and response costs against the United States of America and named departments of the national government (hereinafter United States or the Government or Defendants). The Complaint specified fifteen named facilities located in New Jersey and in other states. The Complaint was brought under three theories of liability: (Count 1) Section

107(a) of CERCLA,[1] 42 U.S.C. § 9607(a)— direct liability; (Count 2) Section 113(f) of CERCLA, 42 U.S.C. § 9613(f)—contribution liability; and (Count 3) recoupment liability under Sections 113(f) and 113(g) of CERCLA. On December 31, 1997, Judge John C. Lifland dismissed without prejudice the first and third counts as to all Defendants. Therefore, only count two, the CERCLA contribution theory of liability under Section 113(f), remains.

The parties have proceeded with attempts at mediation. Unfortunately, to date, these efforts have failed. Pursuant to a pretrial order of Magistrate Judge Hedges, the parties have engaged in extensive discovery with regard to the Louisville, Kentucky facility. The purpose of this focused discovery was to allow that single facility to provide a test case before proceeding to costly and time consuming pretrial and trial proceedings with regard to the remaining fourteen sites and to allow the parties an opportunity to settle their dispute as briefing on legal and factual issues clarified the parties' competing claims and defenses. Discovery is now complete. Before this Court is Defendants' motion for summary judgment.[2]

This matter has been fully briefed. Oral argument was held on November 24, 2003. The Court has carefully considered the relevant law (including persuasive case law authority from other jurisdictions), the submissions of the parties, the record as a whole, including oral argument, and has drawn all reasonable inferences in favor of the non-movant. The Court concludes with regard to Plaintiffs' one remaining cause of action, Count 2 bringing an action pursuant to CERCLA Section 113(f) contribution liability, that there is no issue of genuine material fact that might affect the outcome of the suit under governing law.[3] Therefore for the reasons elaborated below, the Court GRANTS Defendants' motion for summary judgment.

## I. INTRODUCTION

In or about 1941, DuPont began to operate a plant in Louisville, Kentucky (hereinafter "the Facility"). During World War II, and pursuant to contracts with the Defendants, the Facility manufactured the

1. Comprehensive Environmental Response, Compensation and Liability Act of 1980, Pub.L. 96–510, 94 Stat. 2767. CERCLA has since been amended, primarily by the Superfund Amendments and Reauthorization Act of 1986 (hereinafter "SARA"), Pub.L. No. 99–499, 100 Stat. 1613. CERCLA is codified, as amended, at 42 U.S.C. §§ 9601–75.

2. Defendants have also brought a separate motion for partial summary judgment and the parties have brought several motions relating to discovery—including Plaintiffs' two motions in limine to exclude the testimony of two of Defendants' expert witnesses. Because the Court grants Defendants' summary judgment motion, the Court has no reason to address these subsidiary motions here. This memorandum only addresses the United States' primary summary judgment motion. See United States' Memorandum in Support of Motion for Summary Judgment (Sept. 9, 2003); Plaintiffs' Brief in Opposition to Defendants'

Motion for Summary Judgment (Sept. 26, 2003); United States' Reply in Support of Motion for Summary Judgment (Oct. 6, 2003). This memorandum does not address Memorandum in Support of United States' Motion for Partial Summary Judgment Concerning Response Costs Caused by DuPont's post 1948 Operations (Sept. 26, 2003); Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary Judgment Concerning Response Costs Caused by DuPont's post 1948 Operations (Sept. 26, 2003); Reply Memorandum in Support of the United States' Motion for Partial Summary Judgment Concerning Response Costs Caused by DuPont's post 1948 Operations (Oct. 6, 2003).

3. It is worth noting that the Court reaches its position on a pure matter of law. As such, this litigation could have been equally well disposed of on a motion to dismiss under the standards of Fed.R.Civ.P. 12(b)(6).

following products for the Defendants: neoprene, calcium carbide, butadiene, chlorobutadiene, and mono-vinylacetylene. *See* Pl. Compl. ¶¶ 48–49.

With respect to the Facility, the Government has admitted that the Defense Plant Corporation (hereinafter "DPC") owned the Facility between 1942 and 1948; that the United States has succeeded to any CERCLA liability arising from DPC's ownership of the property; that between 1942 and 1948 at least one hazardous substance was disposed of at the Facility; that there has been a release of or a threatened release of at least one hazardous substance from the Facility into the environment; and that this release or threat of release has caused DuPont to incur environmental response costs. *See* Memorandum and Order at 3–4, Civ. A. No. 97–497(JCL) (March 2, 2000).

DuPont does not dispute that since 1948 it has owned the Facility. *See* Report of Robert M. Zoch at 17 (hereinafter "Zoch Report"). Nor does DuPont dispute that under prevailing CERCLA law, it is liable for some equitable share of the clean up costs for pre–1948 and/or post–1948 environmental harms. *See id.* at 4.

## II. STANDARD OF REVIEW

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. In deciding a motion for summary judgment, the Court must construe the facts and reasonable inferences from those facts in a light most favorable to the non-movant. However, only disputes about facts that might affect the outcome of the suit under governing law will preclude entry of summary judgment. Once the initial moving party has carried its initial burden of establishing an absence of a genuine issue of material fact, the non-movant must do more than simply show that there is some metaphysical doubt as to those facts. No issue for trial exists unless the nonmoving party can adduce sufficient evidence favoring it on the disputed factual issue such that a reasonable jury could return a verdict in that party's favor. *See* Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. LEGAL ISSUES AS PUT FORWARD BY THE PARTIES

In the instant motion, Defendants have advanced three arguments supporting summary judgment. Defendants primary argument is that CERCLA Section 113(f), 42 U.S.C. § 9613(f), does not create liability against the United States in the absence of a prior or ongoing Section 106 or Section 107 action, 42 U.S.C. §§ 9606–07. The Government supports its position on the basis of the canons of statutory interpretation and the argument put forward by the dissenters in *Aviall II*.[4] The Plaintiffs vigorously contest the Government's legal position and support their position largely relying on the argument put forward by the majority in *Aviall II:* a recoupment action—even absent a primary

---

4. *Aviall Services, Inc. v. Cooper Industries, Inc.*, 312 F.3d 677 (5th Cir.2002) (en banc) (hereinafter *"Aviall II"*), *pet. for cert. filed* (02–1192), *rev'd*, 263 F.3d 134 (2001) (2 to 1 decision) (hereinafter *"Aviall I"*), *aff'd*, Civ. A. No. 397–CV–1926D, 2000 WL 31730 (N.D.Tex.2000) (Fitzwater, J).

lawsuit brought against the contribution action plaintiff—satisfies the procedural requirements of CERCLA. In the alternative Plaintiffs argue that a (state or federal) RCRA permit program satisfies the indicia necessary for a primary action, a necessary procedural precondition of a contribution action in the CERCLA context. In the Third Circuit, however, the precise reach of Section 113(f) is settled.[5] For this reason, the Court is not persuaded by the interpretive position put forward by either the *Aviall II* majority *or* the dissenters. (And for reasons made clear below, a RCRA permit program cannot function as a primary action or lawsuit making possible a derivative contribution action.) Rather, the Court puts forward an alternative interpretation of the statute as controlled by the law of this Circuit.

The Government puts forwards two additional defenses: (i) a statute of limitations defense; and (ii) a defense based upon Plaintiffs' allegedly having failed to clean up the Louisville sites consistent with the National Contingency Plan. The Court examines these two defenses summarily at the end of this opinion.

## IV. ANALYSIS

### A. The Meaning of CERCLA Section 113(f), 42 U.S.C. § 9613.

■ The primary question before this Court on this motion is whether or not the CERCLA contribution provision, Section 113(f), 42 U.S.C. § 9613, on these facts and given the particular procedural posture of this case, potentially makes the Government liable to DuPont for clean up, removal, and response costs and damages relating to the Louisville, Kentucky site. Section 113(f)(1) states:

42 U.S.C. § 9613(f) *Contribution*

(1) *Contribution. Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.* Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving *contribution* claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. *Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.*

42 U.S.C. § 9613(f)(1) (italics and underscores added).

The two italicized passages above appear—at first blush—to be in some substantial tension. The first italicized passage establishes that a precondition for bringing a contribution claim under this provision is the existence of an ongoing or completed CERCLA suit brought under Section 106 (administrative clean up order issued by the Government) or Section 107 (action for direct liability). *See* 42 U.S.C. §§ 9606–07. It is undisputed that—in the instant litigation—no such prior suit has been initiated against any party to this litigation. On the other hand, the second italicized passage might suggest that the prior provision is not mandatory, and that an action may be brought by any (injured or potentially responsible) party against any other potentially responsible party (hereinafter "PRP"), at any time—*before, during,* or *after* a Section 106 or 107 action

---

**5.** *See New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116 (3d Cir.1997) (Mansmann, J.); *In re Reading,* 115 F.3d 1111 (3d Cir.1997) (Roth, J.); *Morton International, Inc. v. A.E. Staley Manufacturing Company,* 343 F.3d 669 (3d Cir.2003) (Fuentes, J.)

is brought. If this second passage is, in fact, a savings provision, and if this latter interpretation of that provision is correct, then any significant substantive content that might be thought to be found in the prior passage is largely undermined. The briefing of the parties has focused largely—and the Court thinks mistakenly—on this tension.[6] In the Court's view the fundamental legal question that must be resolved is: "What is a contribution action?" And as a subsidiary matter, the Court must also address a related question of application of the law to the facts: i.e. "Given the procedural posture and the uncontested facts of this suit, is this case a proper action for contribution?" In answering these two related questions this Court is faced with a question of statutory interpretation—one that has been squarely addressed by the Third Circuit.

### 1. What is a Contribution Action under CERCLA?

In the Third Circuit, the Court is guided by the holding of *In re Reading*, 115 F.3d 1111 (3d Cir.1997) (Roth, J.), which defines the legal elements of a contribution action under CERCLA.

The Court notes that subsection 113(f) is titled "Contribution." Provision 113(f)(1) is likewise titled "Contribution." The word "contribution" is used three separate times within the body of provision 113(f)(1). And, importantly, the term "contribution" is used in each of the two operative clauses granting would-be plaintiffs the right to sue. Textually, there is *no* right to sue under Section 113(f)(1) outside of a "contribution" action. And there is *no* right to sue for CERCLA contribution beyond the ambit of Section 113. *See In re Reading*, 115 F.3d 1111, 1119 (3d Cir.1997) (Section 113(f) replaced judicially created right under Section 107(a)(4)(B)).

The term " 'contribution' is nowhere defined within CERCLA." *Id.* at 1120. Nevertheless, "it is a term with a familiar and readily acceptable meaning." *Id.* The term is used "in its traditional, common law sense." *Id.* at 1124. A contribution action "denotes a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been *compelled to make*." *Id.* (quotation marks omitted) (emphasis added). "Moreover ... the usual meaning of 'contribution' requires *common liability over to a third-party*, [making the contribution action defendant's] liability to [the contribution action plaintiff] dependent on whether [the contribution action defendant] was potentially liable to the [primary plaintiff]." *Id.* at 1116 (reporting approvingly prior district court proceedings) (emphasis added), *aff'd*, *In re Reading*, 900 F.Supp. 738, 748 (E.D.Pa.1995) (Ditter, J.). "The right of contribution exists only in favor of a tortfeasor who has *discharged* the *entire* claim for the harm by paying more than his equitable share of the common liability...." RESTATEMENT (SECOND) OF TORTS ¶ 886A(2) (1977) (emphasis added).[7]

As the parties note in their briefing, prior to the passage of the SARA amendments to CERCLA, the Courts of Appeals were divided with regard to the existence of and the precise reach of contribution actions under the unamended CERCLA statute. This common law development of the statute was arrested

**6.** The Court does not wish even to remotely suggest any criticism of the briefing of the parties or their presentations at oral argument. Both reached the highest legal standards.

**7.** The Court notes that RESTATEMENT (SECOND) OF TORTS ¶ 886A is frequently cited by the Third Circuit as persuasive authority in CERCLA matters. *See, e.g., In re Reading*, 115 F.3d at 1124.

when Congress stepped in and passed the SARA amendments. "[T]he language of § 113(f), permitting contribution, *replaced* the judicially created right to contribution under § 107(a)(4)(B)." *In re Reading*, 115 F.3d at 1119 (emphasis added). Congress has affirmatively acted to displace the pre-SARA caselaw. Pre–SARA case law is thus not controlling legal authority: it interprets a statute which no longer exists. Or to put it another way, the pre-SARA case law permitting contribution were interpretations of Section 107. Today, only case law interpreting Section 113 is relevant to determining the now in force boundaries of a contribution action. Moreover, pre-SARA caselaw must even lack significant persuasive authority unless there is some substantial reason to believe Congress implicitly adopted the prior case-law when passing the statute. For example, indicia of such congressional adoption of prior caselaw may be found either (i) if Congress had adopted language found in that caselaw into the text of Congress' statute (i.e. the SARA amendments), or (ii) if Congress approvingly or systematically cited that prior case law for the point now in dispute in the legislative history of the statute. Here, Congress has done neither.[8]

2. Given the procedural posture and the uncontested facts of this suit is this case a proper action for contribution?

As explained herein, a CERCLA contribution action can only be brought in three circumstances: (i) a contribution action may be brought during or after a CERCLA Section 106 or Section 107 action; (ii) a contribution action may be brought following a judicially or administratively approved settlement of CERCLA liability pursuant to CERCLA Section 113(f)(3); or (iii) a contribution action may be brought pursuant to the so-called savings clause. *See* 42 U.S.C. § 9613(f)(1) ("Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 . . . or section 9607."). The Court will discuss each of these possibilities in turn.

a. Can DuPont bring its Contribution Claim founded upon a primary action brought pursuant to CERCLA Section 106 or Section 107?

DuPont cannot meet this threshold standard. There is no primary lawsuit in this litigation. There is no "original litigation." There is no Section 106 or Section 107 action.

 Furthermore, although Congress used "contribution" in its traditional, common law sense, Congress also to some extent expanded the conditions in which a CERCLA contribution action could be brought beyond that which would otherwise be defined by the mere common law definition. If the primary action brought

---

**8.** Obviously, the legislative history of the SARA amendments cites much pre-SARA caselaw approvingly. But for the purposes of this motion, the Court is only interested in such citations for the point in dispute—can a PRP bring an action against another PRP absent a primary lawsuit. In response to a query from this Court with regard to whether or not Congress in the legislative history cited prior caselaw for this particular point, Plain-

tiffs informed the Court: "Congress did not cite this caselaw that allowed contribution before an action under Section 106 or Section 107 at all." *See* Plaintiff's Citations to Accompany Oral Argument (Dec. 2, 2003) (Section III Response to Question # 1). The Plaintiffs' candor is much appreciated. The Court had already arrived at the same conclusion having examined the legislative history.

by an innocent injured party or by the Government is a Section 107 action, or if the primary action is an administrative Section 106 action initiated by the Government, the contribution action plaintiff may bring its contribution suit against the contribution action defendant prior to final judgment or settlement with the primary plaintiff. In this situation, where the primary action was either a Section 106 or Section 107 action, Congress, sensitive to the vast liability and hardship associated with CERCLA actions, sought to facilitate cost sharing early in the proceedings. The policy goal here was to allow the Government or an injured *innocent* party bringing a primary action to avail itself of the maximal resources among all wrongdoers. *See, e.g.,* House Energy and Commerce Committee Report 99–253 to H.R. 2817 (Nov. 12, 1985), *as reported at,* 1 SARA/ THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986: THE LEGISLATIVE HISTORY 113:41 (1987) (hereinafter "SARA LEG. HIST.") ("This provision should also

encourage private party settlements and cleanup since the actuality of being brought into litigation as a thirdparty defendant, concurrent with *the original litigation,* has the effect of bringing all such responsible parties to the bargaining table at an early date.") (emphasis added); *see also* Conference Report to H.R.2005 99–262 (Oct. 3, 1986), *as reported at,* 1 SARA LEG. HIST. at 113:2 ("new section 113(f) for authority by settling parties to seek contribution from non-settlors"). This policy goal has no application when, absent a primary lawsuit, a PRP (an admitted polluter under the statute) sues another PRP— the procedural posture of this litigation.[9]

 b. Can DuPont bring an action for contribution founded upon a prior settlement made pursuant to Section 113(f)(3)?

In the instant litigation, there is no prior settlement. Liability to the primary plaintiff (whoever that may be) has not been

---

**9.** The Court believes the *dicta* of the Third Circuit in *In re Reading,* 115 F.3d 1111 (3d Cir.1997), supports the interpretive position put forward here. The Third Circuit held:
 The fact, however, that a direct action might be brought under § 107(a) does not open the door for a PRP to bring an action for contribution under the same section. Indeed, the fact that § 113(f)(1) specifically permits an action for contribution to be brought "in the absence of a civil action under ... section [107]" reinforces our conclusion that Congress intended § 113 to be the sole means for seeking contribution—*at whatever time in the cleanup process the party, seeking contribution, decides to pursue it.*
*Id.* at 1120 (emphasis added). Plaintiffs have apparently interpreted the Third Circuit's *dicta* as carte blanche authority to bring a contribution absent a prior Section 106 or Section 107 action and absent any primary lawsuit. This Court believes the Third Circuit was merely noting what is obvious to all who have labored under CERCLA. The timing of many of CERCLA's provisions is not tied to actual

cleanup—its beginning or its ending. Rights under CERCLA are frequently timed with respect to litigation decisions, including settlement decisions. Thus, a settlement with the Government—before, during, or after a Section 107 action is brought—will free a party from the risk of being named as a third-party contribution defendant. And concomitantly, in the absence of a settlement, a party may be named, served, and joined as a contribution defendant without regard to whether actual cleanup has already begun. Indeed, textually, the statute of limitations against a contribution action does not begin to run until a settlement or judgment is reached with respect to response costs or damages. *See* 42 U.S.C. § 9613(g)(3) (contribution statute of limitations). The timing of actual clean up, removal or remediation does not control. Thus, as the Third Circuit stated, a contribution action brought under Section 113 can be brought without regard to the "time in the cleanup process the party, seeking contribution, decides to pursue it." *In re Reading,* 115 F.3d at 1120.

discharged by any settlement. Moreover, Plaintiffs have not pled for relief under Section 113(f)(3).

 c. Can DuPont bring an action for contribution pursuant to the so-called savings clause in Section 113(f)(1)?

 i. What is the meaning of the so-called savings clause?

Congress has provided for "contribution [actions] in the absence of a civil action under section 9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1). The parties hotly contest the legal consequences of this provision. The Court notes that this provision has been extensively discussed by the majority and dissenters in *Aviall II*. This Court believes that both opinions put forward in *Aviall II* are inconsistent with *In re Reading*, controlling law in this Circuit.

*First*, the Court notes that the dissenters in *Aviall II* held that the so-called savings clause saved causes of action grounded in state law. The Court recognizes that the *Aviall II* minorities' interpretation of the CERCLA statute would demand granting Defendants' motion for summary judgment. Were the Third Circuit to adopt the position of the *Aviall II* dissenters, this Court's judgment would be upheld. Nevertheless, this Court does not adopt the reasoning of the *Aviall II* dissent. In fact, this Court sees little merit in the minority's position in light of the controlling caselaw of this Circuit. The Court believes that the *Aviall II* minorities' position has been largely rejected by the Third Circuit. *Compare In re Reading*, 115 F.3d at 1117 (CERCLA preempts state common law theories of liability), *with Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125–27 (3d Cir.1991) (finding no conflict between CERCLA and cost recovery provisions of New Jersey Spill Compensa-

tion and Control Act). The Court takes the position that if the purpose of the so-called savings clause were to expressly save *all* state remedies, i.e. the position of the *Aviall II* minority, the Third Circuit would not have, and indeed could not have, distinguished state statutory remedies (not preempted) from state common law remedies (preempted).

 ■ *Second*, the position of the *Aviall II* majority has already been expressly rejected by the Third Circuit. "[T]he language of § 113(f), permitting contribution, replaced the judicially created right to contribution under § 107(a)(4)(B)." *Id.* at 1119. This Court has discovered nothing in the legislative history of the SARA amendments indicating that Congress adopted pre-SARA contribution caselaw allowing a "contribution" action to be brought absent a primary completed or ongoing lawsuit. *See supra* note 8 and accompanying text. Because prior caselaw is not controlling, this Court must interpret the statutory text. The text of the so-called "savings clause" only permits "contribution" actions. And a contribution action requires (at least) a prior or ongoing *lawsuit*. The *Aviall II* majority permitted a contribution action absent any such primary lawsuit. Hence, the Fifth Circuit's position must be rejected as inconsistent with established Third Circuit caselaw.

Having rejected the positions of the *Aviall II* majority and minority as inconsistent with the controlling caselaw of this circuit, this Court discusses two *other* possible interpretations of the so-called "savings clause" which are consistent with the law of this Circuit.

*First*, this provision might allow a contribution action to be brought by the contribution action plaintiff against the contribution action defendant, if the contribution action plaintiff has already been *sued* by

the primary plaintiff under the aegis of some other (federal or state) statute or common law cause of action. In other words, although such a contribution action can be brought in "the absence of a civil action under section 9606 ... or section 9607," 42 U.S.C. § 9613, *the contribution action still must have all the indicia of a common law contribution action* as set forth in Section IV[A][1] above. Therefore, any contribution action brought *pursuant to the so-called savings clause* must meet several procedural hurdles.[10] (The Court notes that Congress expanded on the contribution right by permitting such an action to be brought where the primary action is a CERCLA Section 106 order—not a traditional lawsuit. But no such exception was placed into the savings clause. Thus actions brought *pursuant to the savings clause* must meet all the traditional common law elements of a contribution action: i.e., a prior or on-going lawsuit.)

*Second,* the so-called savings clause might not create *any* substantive right to bring any contribution action ever, but merely reaffirms the right to bring a contribution action either expressly granted by coordinate CERCLA provisions in the absence of a Section 106 or Section 107 action or expressly granted by other statutes which incorporate by reference CERCLA Section 113. The exact language of the provision bears remembering. "Nothing in this subsection *shall diminish the right* of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." It is not obvious

that these words create any substantive right to contribution. Their plain meaning is that they do not "diminish rights" otherwise created by operation of law: caselaw or statutory law. As explained, in the Third Circuit, the pre-SARA contribution caselaw has been displaced by the SARA amendments. With regard to statutory law, the only CERCLA related provision expressly creating a right to contribution is Section 113(f)(3) (allowing for contribution following settlement of CERCLA claims with the primary plaintiff). The Court is aware of no other statute incorporating by reference the CERCLA contribution action provision. Therefore, under this interpretation, the so-called savings clause, merely clarified that a settlement releasing a would-be contribution action plaintiff from CERCLA liability against the primary plaintiff or settlor, allows the contribution action plaintiff to bring a contribution action—even absent any prior lawsuit under Section 106 or Section 107. Such a settlement discharges liability owed to the primary plaintiff. Here too, settlement has all the hallmarks of a traditional contribution action. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS ¶ 886A(2) & cmt. d (1977) (discussing settlement as a precondition of contribution liability).

■ To summarize, under either of the two interpretations explained above, the contribution action plaintiff must still meet *all* the usual preconditions of a *contribution* action, if only because that word is used in the so-called savings clause. In so holding, the Court construes the actual text of the provision [11] in conformity with

---

10. *See, e.g., In re Reading,* 115 F.3d at 1120 (defining " 'contribution' as the recovery of 'proportional shares of *judgment* from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the *[common primary] plaintiff* ") (*quoting*

BLACK'S LAW DICTIONARY approvingly) (emphasis added).

11. *But see* Oral Argument Trans. 45:10–14 (Nov. 24, 2003) (Mr. Hyatt for Plaintiff:. "The first sentence of 113(f)(1) confirms you can bring [the contribution action] sooner and the

the controlling case law of the Third Circuit. *See In re Reading*, 115 F.3d 1111, 1120 (3d Cir.1997) ("We rely therefore on CERCLA's plain meaning...."). Furthermore, even were this Court to adopt the *general* interpretive approach of the *Aviall II* majority (savings clause saves pre-SARA case law permitting contribution) or minority (savings clause saves state causes of action), it would be bound by the Third Circuit's express mandate that a CERCLA contribution action conform to the traditional, common law understanding of that term, at least absent the express exceptions in the statute itself. *See, e.g.*, 42 U.S.C. § 9613(f)(1) (contribution action may be predicated on a mere *administrative order* pursuant to Section 106). To put it in the simplest terms, this case is an action for recoupment or reimbursement, and as such it is precluded by the law of this circuit. *Cf. In re Reading*, 115 F.3d at 1124 ("it is inherent in the concept of contribution that the persons commonly liable be liable to the same entity. Otherwise, contribution could become an endless circle of attempts to seek reimbursement from unrelated parties.").

ii. Is the procedural posture of this case consistent with the meaning this Court applies to the so-called savings clause?

*Question:* Can Plaintiffs seek relief under this Court's second interpretation of the so-called savings clause (i.e., a contribution action may follow a settlement releasing the contribution action plaintiff from CERCLA liability)? Obviously, if the so-called savings clause merely clarifies the right to bring a CERCLA action

following a settlement discharging CERCLA liability (and in the absence of any prior lawsuit under Section 106 or Section 107), then DuPont's action here must fail as a matter of law.

■ *Question:* Can Plaintiffs seek relief under this Court's first interpretation of the so-called savings clause (i.e., a contribution action—even one absent a Section 106 or Section 107 primary action—must have all the indicia of a traditional common law contribution action)? Here too, Plaintiffs' claim must fail as a matter of law. Plaintiffs have argued both: (i) that the requirements of the two RCRA permit programs "mandated" by Kentucky and the United States are the primary actions making possible DuPont's derivative contribution action against the United States, and (ii) no primary action is necessary under pre-SARA caselaw. (The Court has already addressed DuPont's second argument: see *supra* note 8 and accompanying text.) For the following reasons the Court holds that the requirements of RCRA permit program fail as matter of law to meet the requirements of a traditional, common law contribution action.

■ *First*, a contribution action requires two parties who are jointly and severally liable to some *third-party*. *See In re Reading*, 115 F.3d at 1116. Plaintiff here has argued that the DuPont can seek contribution against the United States even though the so-called primary action under RCRA was brought by an arm of the United States Government. But if the United States is both the primary action plaintiff and contribution action defendant, then this suit is *not* a traditional contribu-

---

last sentence of 113(f)(1) confirms that you can bring it even in the absence of a civil action under section 106 or 107. It is difficult to read that sentence any other way because that is exactly what it says."); *id.* at 45:2–5 ("[This action] is what the Courts of

Appeals around the country have called the quintessential action for contribution by one covered person responsible party under the statute against another person under the statute").

tion action in any normative sense. (The Court notes that there is no clear admission in the record by DuPont that DuPont is liable to Kentucky or to the municipality of Louisville or to any innocent landowner.) Admittedly, that still leaves open the possibility of common liability owed to Kentucky pursuant to Kentucky's RCRA permit program which (like the federal permit) "mandates" that DuPont take on specified response, remedial, and/or clean up costs as a precondition and/or continuing condition of its RCRA permit program.

■ *Second*, a contribution action "denotes a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been *compelled to make.*" *In re Reading*, 115 F.3d at 1116 (emphasis added). Traditionally, compulsion in this sense embraces obligations created by law: a statutory obligation or service of process leading to adverse litigation. DuPont here faces neither. DuPont has *applied* for the Kentucky permit.[12] A permit program is not compulsion in any normative sense. The simple fact is DuPont could legally choose not to use the Kentucky site for industrial or commercial purposes. DuPont could sell or gift the land. DuPont could allow the land escheat to the state for failure to pay taxes. In all these cases, DuPont need not apply for the RCRA permit. Admittedly, such choices are economically burdensome. But they establish that DuPont's choice to seek a RCRA permit is not compelled in any traditional sense. And even if in some abstract sense burdensome economic regulations could be deemed compulsion, this is assuredly not the compulsion associated with a common law action for contribution. In the contri-

bution setting, compulsion must refer to service of process dragooning an unwilling defendant into court against his will. *See, e.g.*, RESTATEMENT (THIRD) TORTS/APPORTIONMENT OF LIABILITY ¶ 23 cmt. b (1999) ("A person seeking contribution must extinguish the liability of the person against whom contribution is sought for that portion of the liability, *either by settlement with the plaintiff or by satisfaction of judgment.*") (emphasis added). Such a judicial proceeding could ultimately result in a victory for the would-be contribution plaintiff (rendering a contribution action unnecessary), or settlement or final judgment against the contribution action plaintiff. Because DuPont was not compelled to seek the Kentucky permit, and because the Kentucky permit program is not a judicial action for relief, DuPont's claim must fail as a matter of law. (Obviously, the same arguments could be made with regard to United States' RCRA permit program.)

■ *Third*, "[t]he right of contribution exists *only* in favor of a tortfeasor who has *discharged* the entire claim for the harm by paying more than his equitable share of the common liability...." RESTATEMENT (SECOND) OF TORTS ¶ 886A(2) (1977) (emphasis added). A claim can only be discharged by entry and satisfaction of final judgment, or by settlement. Even assuming that the primary plaintiff in this action is Kentucky, and even assuming that DuPont's clean up costs to date might reduce any claim that might be brought in the future by Kentucky against the United States, this Court (during these proceedings) can make no finding that any such actions by DuPont *discharged* the entire claim or even any part of that claim. As a

---

12. *See* Appendix to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment ex. 2, DKY 0000178 ("This permit is based on the assumption that the informa-

tion in the permit *application* submitted October 28, 1985 ... is accurate.") (emphasis added).

matter of elementary due process, such a finding would require that Kentucky have at least the benefits of notice, an opportunity to be heard, service of process and formal joinder. Quite obviously Kentucky is not a party to this case. Therefore, this Court can make no findings that any claim (or part thereof) has been discharged. Therefore, DuPont's claim for contribution must fail as a matter of law. To put it another way, although this Court's equitable powers to do substantial justice are extensive, this Court has no power to discharge the claim of some yet unnamed, unserved, unjoined, unrepresented third-party (i.e. Kentucky, Louisville, or some other innocent third-party) to whom both DuPont and the United States (might) share common liability. Any attempt by this Court to declare the third-party's claim satisfied or discharged by DuPont's past, current, and future response efforts at removal and remediation (pursuant to the RCRA permit) would quite obviously offend the most basic due process norms. *See, e.g., Martin v. Wilks*, 490 U.S. 755, 762, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (Rehnquist, C.J.) ("A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").

*Fourth*, a traditional, common law contribution action requires the discharge of the primary plaintiff's *entire* claim. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS ¶ 886A(2). There is divided authority on what is meant by an *entire* claim. The phrase "entire claim" may be taken literally: the entirety of the primary plaintiff's claim. Or it may refer merely to the entire claim to which contribution plaintiff is seeking relief against the contribution defendant. In either case, whether the claim is the entirety of plaintiff's primary claim, or just the entire claim to which the contribution action plaintiff is seeking re-

coupment, the entire claim must be discharged through satisfaction of judgment or settlement. As explained above, DuPont can meet neither standard given the procedural posture of this litigation: an absence of a joined primary plaintiff. Although DuPont continues to take response, remediation and/or removal actions in conformity with its permit duties, DuPont has nowhere argued that Kentucky's (or anyone else's) *entire* claim has been (or will be) discharged. Hence, the preconditions for a contribution action have not and, indeed, cannot be met.

*Fifth*, even assuming, as Plaintiffs must, that a CERCLA contribution action might be brought concurrently with a primary action, only a proper *defendant* can bring such an action. *See* RESTATEMENT (SECOND) OF TORTS ¶ 886A cmt. i ("procedural rules also determine whether *a defendant* who pays more than his equitable share of the obligation may obtain a order for contribution by motion in the original action or must bring a separate suit.") (emphasis added); *cf.* Fed.R.Civ.P. 14(a) ("When *Defendant* May Bring in Third Party.") (emphasis added); Fed.R.Civ.P. 14(b) (plaintiff may implead third-party *only* if counterclaim is asserted against plaintiff). DuPont is not a defendant in this or any other Kentucky-site clean-up related litigation known to this Court. Thus, Plaintiff DuPont cannot bring a contribution action.

▇▇▇ *Sixth*, although the matter is capable of doubt, the Court believes that the only cause of action permitting a CERCLA contribution action is a primary action brought pursuant to CERCLA or a release from CERCLA liability pursuant to Section 113(f)(3). Thus, a primary action brought under any other federal statute, including a RCRA permit program, absent express statutory authority, is insufficient to permit the derivative CERC-

LA contribution action. Likewise, a primary action brought under state common law (e.g., trespass or nuisance) or state statutory law (e.g., state analogues to CERCLA), is also procedurally insufficient to permit a CERCLA derivative contribution action. *It is the Court's view that the purpose of the so-called savings clause was to clarify that a contribution action brought following a settlement under the aegis of Section 113(f)(3) should not be held to be procedurally insufficient because of an absence of a prior primary action brought pursuant to CERCLA Sections 106 or 107.* The Court believes that this interpretation is compelled by established Third Circuit case law. *See, e.g., In re Reading*, 115 F.3d at 1114 ("[W]e determine that the [contribution action plaintiff's] claim fails as a matter of law because [the contribution action defendant] is not liable to [the primary plaintiff] under [CERCLA] § 107(a) ....") (emphasis

added). If any theory of liability, state or federal, between the contribution action defendant and the primary plaintiff would do to establish the procedural preconditions for contribution liability, then the Third Circuit's requiring Section 107 liability in *In re Reading* is difficult, at best, to understand.[13] In short, absent a Section 106 or Section 107 primary action or a settlement pursuant to Section 113(f)(3), DuPont cannot bring a contribution action.

The Court freely acknowledges that its reliance on the procedural strictures relating to contribution actions found in *In re Reading* and *The Restatement* may limit the ability of some PRPs to recoup cleanup costs from other PRPs. And the Court also acknowledges that this result might very well hamper some PRP efforts at removal and remediation of hazard waste sites. If the Court believed that the statute were

**13.** The Court's holding may appear to be in tension with *Morton International, Inc. v. A.E. Staley Manufacturing Company*, 343 F.3d 669 (3d Cir.2003). *See also* Plaintiff's Citations to Accompany Oral Argument (Dec. 2, 2003) (citing *Morton, supra*, and persuasive authority from other circuits, as holding that a contribution claim is "allowed ... where no CERCLA 106 or 107 action preceded the claim."). This Court disagrees with DuPont's restatement of the *Morton* holding. In *Morton*, the Third Circuit noted that "[s]ince [the enactment of CERCLA], [Plaintiff] Morton has been funding the environmental efforts under various judicial orders." *Id.* at 673–74. The Third Circuit did not explain what court issued the orders, or the underlying statutory or common law basis for those orders. The nature of those orders was not litigated (or discussed by the parties' papers) before the Third Circuit on appeal. There may (or may not) have been a prior CERCLA Section 106 or Section 107 action, or a release from CERCLA liability—anyone of which would permit a contribution action. Moreover, the *Morton* Court did not expressly overrule *In re Reading*. In this situation, the on–point and litigated holding of *In re Reading* is and remains binding precedent in spite of the ambi-

guities of *Morton*. *See United States v. Monaco*, 23 F.3d 793, 803 (3d Cir.1994) ("[N]o panel of this court may overrule the holding of a previous panel. Only the *in banc* court may do that. To the extent that the decision of a later panel conflicts with existing circuit precedent, we are bound by the earlier, not the later, decision.") (*citing* Internal Operating Procedure of the United States Court of Appeals for the Third Circuit 9.1); *United States v. Sclafani*, 996 F.Supp. 400, 405 (D.N.J.1998) (Orlofsky, J.) ("In general, to the extent that the decision of a later panel conflicts with prior Third Circuit precedent, this [district] court remains bound by the earlier, not the later, decision.").

Moreover, *Morton* can be distinguished from the instant litigation in another way. In *Morton*, the contribution action plaintiff was the *defendant* in a prior action and that action went to *final judgment. Morton*, 343 F.3d at 673–74 (*citing Morton Int'l, Inc. v. General Acc. Ins. Co. of America*, 134 N.J. 1, 629 A.2d 831 (1993), and *State Dep't of Environmental Protection v. Ventron Corp.*, 94 N.J. 473[, 468 A.2d 150] (1983)). In the instant litigation, the RCRA permit programs are even now ongoing. And they can never reach final judgment.

ambiguous or if the Court believed that the meaning of the term "contribution" were unsettled when Congress wrote the SARA amendments, then the Court would of necessity turn to the general purposes of the statute to determine the reach of the provision. *But see Aviall II*, 312 F.3d at 680–81. But here the statute's terms appear reasonably clear. Any effort by this Court to extend the legal boundaries of a traditional contribution action into a pure recoupment or reimbursement action would not be interpreting the CERCLA statute, but rather would be rewriting the statute.[14] *See In re Reading*, 115 F.3d at 1124 ("§ 113(f) ... adopts[ ] the ... traditional sense of contribution"). This is not the Court's role.

Moreover, the Court believes that its position with regard to the liability-creating reach of the term "contribution" is consistent with the basic norms of our democratic processes. "By the time a bill reaches the floor of the House or Senate, it reflects a myriad of political bargains and compromises." Mark Seidenfeld, *A Civil Republican Justification for the Bureaucratic State*, 105 HARV. L.REV. 1511, 1545 (1992). Under such conditions, it is logical to expect that a majority coalition seeking to protect the environment will create low floors establishing broad liability among PRPs. But one should also expect that other elements of the majority coalition will create some ceilings defining, channeling, minimizing, and rendering liability predictable and orderly thereby facilitating the possibility of business' procuring insurance. Once the compromise is embodied in the statute's text, it is the Court's task to protect the deal as written, not to rewrite the deal in favor of the largest faction within the coalition that passed the legislation.

> What matters is for the judge to form a view of these purposes that is continuous with the real world of discourse and conflict from which that fragment of law came. Moreover, the view should recognize the contestable and factional quality of each of the interests, concerns, and assumptions to which it appeals. They count not because they are the best and wisest but because they won, and were settled, earlier down the road of lawmaking.

ROBERTO M. UNGER, WHAT SHOULD LEGAL ANALYSIS BECOME 114 (1996). The Court is of the view that the very use of the term "contribution" embodies a political compromise determining the boundaries of future CERCLA actions.

## B. Policy Considerations relevant to interpreting CERCLA Section 113(f), 42 U.S.C. § 9613.

Although policy considerations alone do not determine the Court's interpretation of the CERCLA statute, the Court notes several such considerations generally supporting its interpretation.

*First*, the Court's approach generally leaves the policy arms of the Executive Branch with the discretion to make determinations as to site priority, particularly

---

14. *But see* Oral Argument Trans. 48:12–15 (Nov. 24, 2003) (Mr. Hyatt for Plaintiff: "In order to reach the interpretation your Honor's question suggests, there has to be some way of stopping the spread of the last sentence of [CERCLA Section] 113(f)(1) and the language contains no method for stopping that spread."). The Court disagrees: the statute's very use of the term "contribution" is some substantial limit on the ability of a PRP to bring a CERCLA Section 113(f) action. *See In re Reading*, 115 F.3d 1111 (3d Cir. 1997) (precluding derivative action brought by contribution action plaintiff because contribution action defendant was not liable to primary plaintiff). It is worth noting that in *In re Reading*, the primary plaintiff—the United States—was a named party to the action. In the instant litigation, there is no named, served, joined, or represented primary party.

when the Government's money is expended. There are exceptions. State entities representing the public, Indian tribes, and *innocent landowners*[15] may nevertheless bring Section 107 actions against the Federal Government irrespective of the policy choices of the Executive Branch. Unlike these particular entities, expressly mentioned in the statute, DuPont does not represent the public, is not a quasi-sovereign entity, and, on the facts of this case, is not an innocent landowner. Because the equities are substantially different, there is substantially less reason to allow DuPont a free hand with regard to initiating an action attaching monetary liability to the Federal Government.

*Second,* the Court believes the environmental regulators within the Federal Government are institutionally better situated to determine the public interest when selecting among competing clean up sites than DuPont (and this Court). DuPont has a substantial interest in cleaning up its sites—irrespective of the cost to the Government or the public interest generally. This is particularly true when the movant holds title to the site and substantial economic rents accrue to the party if *its* property ultimately becomes environmentally sound following clean up. But the Government's perspective (or so one hopes) is somewhat larger. The Government has no *particular* interest in DuPont's sites. The Government is charged with clean up of *all* SuperFund sites and in the process it must *choose* those sites demanding the most immediate action, and those sites having

the best claim against the Government's all too limited treasury. The Executive Branch is better situated to make this determination than DuPont.

## C. The Government's Statute of Limitations Defense.

The Government has put forward a statute of limitations defense. The Court does not reach this defense. The correct interpretation of CERCLA's statute of limitations provisions is intimately tied to the reach of liability under the substantive contribution provision. If this Court's interpretation of the reach of liability is upheld throughout the process of appellate review, then addressing the statute of limitations defense is wholly nugatory. Moreover, if the law of CERCLA contribution liability is clarified on direct appeal or in related proceedings,[16] the Court fully expects that any such clarification will also extend to guiding the district court (on remand or on reconsideration) with regard to the reach of the (relevant) CERCLA statute of limitations provisions.

## D. DuPont has not failed to Comply with 40 C.F.R. § 300.700.

 The Government argues that DuPont's claim for recovery of its CERCLA response costs must be rejected (in part) because DuPont has failed to substantially comply with the National Contingency Plan's (hereinafter "NCP") provisions. These provisions generally require public notice and participation prior to and during the responsible party's removal action.

---

**15.** Whether or not an innocent landowner can bring a Section 107 action against the Government is an issue that is not properly before this Court. Similarly, this precise question has not been briefed by the parties. The Court believes that this is a question of law that has not yet been settled by the Third Circuit.

**16.** A petition for writ of certiorari was filed in *Aviall II.* The Supreme Court entered an order requesting briefing from the Solicitor General's office on behalf of the United States. See *http://www.supremecourtus.gov/orders/courtorders/042103pzor.pdf* (order list of April 21, 2003) (last visited Oct. 26, 2003). The Solicitor General submitted its brief some time in December 2003.

Plaintiffs counter-argue that DuPont has, in fact, substantially complied, and that participation by state government environmental regulators during the removal action is a substitute for complying with the NCP provisions relating to public participation. *See* CERCLA Section 105, 42 U.S.C. § 9605; *see also* 40 C.F.R. § 300.700. As explained below, the Court has no reason to directly reach Defendants' argument (i.e. state government regulators' participation is a substitute for public participation under the NCP). Rather, the Court has determined that 40 C.F.R. § 300.700 has no application to a response action claim brought under the aegis of CERCLA Section 113, 42 U.S.C. § 9613. In other words, the Court's position is that 40 C.F.R. § 300.700 does not apply to a contribution action plaintiff, but only applies to plaintiffs bringing primary actions under Section 107 (and in other discrete situations listed by the regulation, but having no relation to the facts of this litigation).

The parties have agreed that for the purposes of this motion and for the particular site and site sub-locations discussed in the motion that the provisions of the Code of Federal Regulations apply as they were in force in 1990 and 1994—depending on the particular details of the response action. Both parties labor under the assumption that 40 C.F.R. § 300.700(c)(2) applies to the instant action:

> Responsible parties shall be liable for necessary costs of response actions to releases of hazardous substances incurred by any other person consistent with the NCP.

40 C.F.R. § 300.700(c)(2), *as reported at,* 55 F.R. 8858 (March 8, 1990) and 59 F.R. 47452 (Sept. 15, 1994). Although the language of the regulation, *supra,* is general, and it appears to embrace the facts of the

current action, this subsection falls within § 300.700(c). That provision is titled: *"Section 107(a) cost recovery actions."* Searching the length and breadth of this regulation, one finds nothing indicating that the reach of the regulation extends to cost recovery actions brought under Section 113(f). Rather, there are substantial reasons to believe that the reach of subsection (c)(2) extends only to Section 107 cost recovery actions. The instant litigation is not a Section 107 cost recovery action. *Therefore DuPont cannot be out of compliance with the regulation.*

*First,* as the Court explained above, the title of this provision indicates that the subprovision's reach extends to Section 107 actions only. *Second,* the language of § 300.700(c) mirrors the precise language found in Section 107, not Section 113(f).

42 U.S.C. § 9607(a)(4)(A): all costs of removal or remedial action incurred by the *United States Government or a State or an Indian tribe not inconsistent with the national contingency plan*

40 C.F.R. § 300.700(c)(1): Responsible parties shall be liable for all response costs incurred by the *United States government or a state or an Indian tribe not inconsistent with the NCP.*

and

42 U.S.C. § 9607(a)(4)(B): any other *necessary costs of response incurred by any other person consistent with the national contingency plan*

40 C.F.R. § 300.700(c)(2): Responsible parties shall be liable for *necessary costs of response* actions to releases of hazardous substances *incurred by any other person consistent with the NCP.*[17]

*Third,* each subsection of § 300.700, (c) through (f), is an expansion on subsection (b). 40 C.F.R. § 300.700(b) states:

---

**17.** Italics has been added to illustrate similarities between the statute and the regulation.

*Summary of CERCLA authorities.* The mechanisms available to recover the costs of response actions under CERCLA are, in summary: (1) Section 107(a) ... (2) Section 111(a)(2) ... (3) Section 106(b), and (4) Section 123.

Again, nothing here embraces recovery of response costs under the contribution provision, CERCLA Section 113(f), absent one of the listed underlying actions, including Section 107.

This interpretation of the regulation is wholly consistent with this Court's interpretation of the underlying statute. In a traditional contribution action, the primary plaintiff has begun (or hopes to begin) removal and remediation actions. The primary plaintiff's actions are addressed in terms of compliance with the NCP. If that plaintiff fails to comply, then the defendant (i.e., the contribution action plaintiff) is not liable and the Court then need not address derivative liability between the contribution action plaintiff and contribution action defendant. In other words, the regulation is geared to the primary action, not the derivative action. It has no application in this litigation because there is no primary lawsuit.

Under these circumstances, the Court has no reason to reach the details of Plaintiffs' or Defendants' rival positions relating, in large part, to whether or not the participation of state government regulators in Plaintiffs' response action acts as a substitute for the public participation requirement under the regulation. *See* 40 C.F.R. § 300.700(c)(5 & 6). If the Court's position in this regard is upheld on appeal, then any ruling by this Court on the relative merit of the parties' competing positions with regard to state government participation as a substitute for public participation under the NCP would be unnecessary dicta. The Court need not

reach that question: the question briefed by the parties. On the other hand, if this Court's position with regard to the federal regulation at issue is not upheld and concomitantly if this Court's interpretation of the underlying question of statutory construction is also rejected on appeal, the Court fully expects clarification of the relevant rule of law from the Third Circuit with regard to interpreting the disputed regulatory provision.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment.

Summary judgment is GRANTED with respect to Count 2: Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

A separate order will be entered consistent with this opinion.