

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2007

# EI DuPont de Nemours v. USA

Precedential or Non-Precedential: Precedential

Docket No. 04-2096

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"EI DuPont de Nemours v. USA" (2007). *2007 Decisions.* Paper 158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD
CIRCUIT

———

No. 04-2096

———

E.I. DUPONT DE NEMOURS AND COMPANY;
CONOCO, INC.; SPORTING GOODS PROPERTIES, INC.,
                                          Appellants

v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF COMMERCE;
UNITED STATES DEPARTMENT OF DEFENSE;
UNITED STATES DEPARTMENT OF THE ARMY;
UNITED STATES DEPARTMENT OF ENERGY;
UNITED STATES DEPARTMENT OF THE INTERIOR;
UNITED STATES DEPARTMENT OF THE NAVY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 97-cv-00497)
District Judge: Honorable William J. Martini

———

Argued April 17, 2006
Before: SLOVITER, AMBRO, and MICHEL,[*]Circuit Judges.
Opinion Filed August 29, 2006

On Remand from the Supreme Court of the United States
June 18, 2007

_____

    [*] Hon. Paul R. Michel, United States Circuit Judge for the
Federal Circuit, sitting by designation.

(Filed: November 20, 2007 )

_____

William H. Hyatt, Jr.   (Argued)
Kirkpatrick & Lockhart Preston Gates Ellis
Newark, NJ 07102

John McGahren
Patton Boggs
Newark, NJ 07102

      Attorneys for Appellants

John T. Stahr
Ellen J. Durkee   (Argued)
United States Department of Justice
Environment & Natural Resources Division
Washington, DC 20026

      Attorneys for Appellees

Michael W. Steinberg
Morgan, Lewis & Bockius LLP
Washington, DC 20004

      Attorney for Amicus-Appellants
      Superfund Settlements Project and
      American Chemistry Council

_____

OPINION OF THE COURT

_____

SLOVITER, Circuit Judge.

This matter is before us on the order of the Supreme Court of the United States dated June 18, 2007, which granted the petition for a writ of certiorari filed by DuPont, vacated the

judgment of this court, and remanded for further consideration in light of its opinion in United States v. Atlantic Research Corp., 551 U.S. ___, 127 S. Ct. 2331 (2007). In our earlier opinion, a majority of this court held that DuPont could not pursue an action under CERCLA to recover from the United States a portion of its cleanup costs. The dissent would have held that DuPont could maintain an action for cost recovery under § 107 of CERCLA. In light of the Supreme Court's order, we return to the issue presented.

# I.
## Introduction

Appellants E.I. DuPont de Nemours & Co., ConocoPhillips Co., and Sporting Goods Properties, Inc. (collectively "DuPont" or "appellants") own and operate industrial facilities throughout the United States that are contaminated with hazardous waste. DuPont admits that it contaminated those sites, but alleges that the United States also contaminated parts of the sites. After DuPont voluntarily cleaned up a site jointly polluted by both DuPont and the government, DuPont filed this suit under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., seeking an order requiring the government to reimburse it for a share of the cleanup costs. The District Court granted the motion of the United States for summary judgment. E.I. DuPont de Nemours & Co. v. United States, 297 F. Supp. 2d 740 (D.N.J. 2003). The District Court thereafter entered judgment on the pleadings for the United States with respect to the remaining sites. E.I. DuPont de Nemours & Co., No. 97-497, 2004 U.S. Dist. LEXIS 30498, at *2 (D.N.J. Mar. 1, 2004). This court affirmed.

In the opinion accompanying the now-vacated judgment, we held that two of our precedents – New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997), and Matter of Reading Co., 115 F.3d 1111 (3d Cir. 1997) – precluded DuPont's claims. See E.I. DuPont de Nemours & Co. v. United States, 460 F.3d 515, 518 (3d Cir. 2006). We read our opinion in New Castle County as barring potentially responsible

3

parties from pursuing a cost recovery action under CERCLA § 107(a), 42 U.S.C. § 9607(a), thereby limiting potentially responsible parties to an express cause of action for contribution under CERCLA § 113, 42 U.S.C. § 9613.[1] Id. In our opinion in Reading, which was decided a few weeks after New Castle County, we held that the statutory remedy in § 113 was the exclusive remedy for potentially responsible parties seeking contribution, thereby replacing any judicially created implied cause of action for contribution under § 107. Id. We held that because the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), limited use of § 113 to parties that cleaned up contaminated sites pursuant to an order adjudging them liable or who settled such an action, DuPont, which had cleaned up voluntarily, had no viable claim. Id.

Subsequently, the Supreme Court decided United States v. Atlantic Research Corp., 551 U.S. ___, 127 S. Ct. 2331 (2007), holding that a private party may recover under § 107 voluntarily incurred cleanup costs from another party, including the government, without any establishment of liability to a third party. It is apparent that Atlantic Research Corp. impels us to reconsider our precedents.

## II.
### Statutory Framework

The apportionment of cleanup costs among the entities generally referred to as potentially responsible parties ("PRPs")[2]

---

[1]We refer to the sections of CERCLA rather than the codified versions of those sections in the United States Code, except that we note each initial reference to a new section of the statute.

[2] There has been some discussion in the case law about the accuracy of the use of the term "potentially responsible party" or "PRP" to refer to those parties that potentially bear some liability for contaminating a site. See, e.g., Consol. Edison Co. of N.Y. v. UGI Utils., Inc., 423 F.3d 90, 97 n.8 (2d Cir. 2005) (criticizing use

is set forth in the applicable provisions of CERCLA. Congress enacted CERCLA in 1980 to address the "serious environmental and health risks posed by pollution." United States v. Bestfoods, 524 U.S. 51, 55 (1998). CERCLA has two principal purposes. See Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 676 (3d Cir. 2003). First, CERCLA is a remedial statute that "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994). Second, the statute requires "everyone who is potentially responsible for hazardous-waste contamination . . . to contribute to the costs of cleanup." Bestfoods, 524 U.S. at 56 n.1 (emphasis and internal quotation marks omitted).

Several sections of CERCLA are relevant to our discussion.

### A. Sections 106 and 107

CERCLA § 106(a) provides that the United States may act to "secure such relief as may be necessary to abate" a "substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." 42 U.S.C. § 9606(a). CERCLA § 107(a)(1)-(4) defines "covered persons," that is, the class of persons responsible for the costs incurred pursuant to § 106 or other sections, as follows:

(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise

---

of the term "PRP" as vague and imprecise because the term does not appear anywhere in CERCLA). Because the Supreme Court in Atlantic Research Corp. uses the term "PRP," we use that term here as well.

arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a).

Section 107(a)(4)(A)-(D) provides that those covered persons "shall be liable for":

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a)(4)(A)-(D).

**B. Section 113**

In 1986, Congress enacted the Superfund Amendments and Reauthorization Act ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613, which added § 113 to CERCLA. Section 113(f)(1)

6

provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [CERCLA § 107(a)] of this title, during or following any civil action under section 9606 [CERCLA § 106] of this title or under section 9607(a) [CERCLA § 107(a)] of this title. . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 [CERCLA § 106] of this title or section 9607 [CERCLA § 107] of this title.

42 U.S.C. § 9613(f)(1).

There are three subsections of § 113 that are of particular relevance. They provide that: (1) a PRP that "has resolved its liability to the United States or a State in an administrative or judicially approved settlement" will not be liable for claims for contribution from other PRPs with respect to "matters addressed in the settlement," id. § 113(f)(2); (2) a settling PRP may seek contribution from non-settling PRPs, id. § 113(f)(3)(B); and (3) the statute of limitation for an action under § 107(a) is six years, whereas the statute of limitation for an action under § 113(f)(1) is three years, id. § 113(g).

## C. Section 120

CERCLA § 120(a)(1) contains a waiver of the United States' sovereign immunity. 42 U.S.C. § 9620(a)(1). Section 120(a)(1) provides that "[e]ach department, agency, and instrumentality of the United States . . . shall be subject to, and comply with, this chapter in the same manner and to the same extent . . . as any nongovernmental entity, including liability under section 9607 [CERCLA § 107] of this title." See FMC Corp. v. U.S. Dep't of Commerce, 29 F.3d 833, 840 (3d Cir. 1994) (en banc) ("[W]hen the government engages in activities that would make a private party liable [under CERCLA] if the

7

private party engaged in those types of activities, then the government is also liable." (emphasis omitted)).

### III.
### Facts and Procedural History

As we noted in our earlier opinion, DuPont owns fifteen facilities in various states, each of which is contaminated with hazardous waste.[3] DuPont, 460 F.3d at 525. The United States also owned each site during World War I, World War II, and/or the Korean War. The United States polluted the sites during its period of ownership.

In January 1997, DuPont commenced this action against the government in the United States District Court for the District of New Jersey, seeking recovery for some of the cost of its voluntary cleanup efforts. The complaint alleged causes of action for cost recovery under § 107(a) of CERCLA, as well as for contribution under § 113(f)(1) of CERCLA. DuPont voluntarily dismissed its claims under § 107(a) and for "recoupment" of costs without prejudice. In order to curtail the expenses of discovery, the District Court designated the Louisville, Kentucky facility as a "test case" to determine whether DuPont could maintain its action against the government. Following completion of discovery, the government moved for summary judgment, arguing that DuPont had no cause of action for contribution under § 113 because it was a PRP that had voluntarily undertaken cleanup costs without having been sued or without settling its liability.

---

[3] The facilities include DuPont sites in Newark, New Jersey; Carneys Point, New Jersey; Parlin, New Jersey; Pompton Lakes, New Jersey; Gibbstown, New Jersey; Buffalo, New York; Niagara, New York, Niagara Falls, New York; East Chicago, Indiana; Louisville, Kentucky; Nashville, Tennessee; Spruance, Virginia; and Belle, West Virginia; a ConocoPhillips site in Ponca City, Oklahoma; and a Sporting Goods Properties site in Bridgeport, Connecticut.

8

On December 30, 2003, the District Court granted the government's motion for summary judgment with respect to the Louisville, Kentucky site. DuPont, 297 F. Supp. 2d at 743. The District Court concluded that because DuPont had not been sued under § 106 or § 107 and had not otherwise settled its liability with respect to the Louisville facility, it could not pursue an action for contribution under § 113. See id. at 747-48. A contribution action under § 113 required, according to the District Court, a prior or ongoing lawsuit. Id. at 749. The District Court had correctly foreseen the subsequent decision of the Supreme Court in that respect.

On March 1, 2004, the District Court issued a ruling and order granting the government judgment on the pleadings with respect to the other fourteen sites. The District Court concluded that the pleadings did not suggest any basis to conclude that the fourteen other sites would yield a different result than the Louisville site.

DuPont appealed. We stayed the appeal pending the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), which held that a party who had neither been held responsible following an action under § 106 or § 107 nor settled could not pursue a claim under § 113. After the Cooper Industries opinion was filed, DuPont argued that (1) we should rule that as a matter of law, in light of Cooper Industries, DuPont has a right of contribution under CERCLA that is independent of the remedy provided by § 113, even in the absence of a civil action under § 106 or § 107; (2) a PRP, such as DuPont, has a cause of action implied under CERCLA to recover an equitable share of response costs from another PRP pursuant to the text of § 107(a)(4)(B) or federal common law even in the absence of a prior or pending § 106 or § 107 civil action or a § 113(f)(3)(B) settlement; (3) the District Court erred by declining to imply a right of contribution based on any other provision of CERCLA and that the decision in Cooper Industries demolished the assumptions underlying our analysis in Reading; and (4) the District Court erred in granting judgment on the pleadings by dismissing DuPont's § 113(f) contribution claims with respect to all fifteen sites.

9

On August 29, 2006, a divided panel of this court issued an opinion, principally affirming the District Court's judgment. DuPont, 460 F.3d at 528.  DuPont filed a petition for writ of certiorari to the Supreme Court.  On June 18, 2007, the Court granted the writ.  See E.I. DuPont de Nemours & Co. v. United States, 127 S. Ct. 2971 (June 18, 2007).  The Court vacated the judgment and remanded the case to this court for further consideration in light of Atlantic Research Corp.  Id.  We asked the parties to submit supplemental briefing on the effect of Atlantic Research Corp. on the issues in this case.

## IV.
## Rights of a PRP under CERCLA and SARA

The District Court's grant of summary judgment and judgment on the pleadings is subject to plenary review.  See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219-20 (3d Cir. 2005).[4]  On review, we construe all facts and inferences in the light most favorable to the non-moving party, and "[j]udgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law."  Id.  at 220.  Questions of statutory interpretation are also subject to plenary review.  Lafferty v. St. Riel, 495 F.3d 72, 76 n.5 (3d Cir. 2007).

Although our precedents, New Castle County and Reading, counseled that DuPont could not maintain a cause of action against the United States for cost recovery of voluntarily incurred cleanup expenses under CERCLA § 107, the Supreme Court's decision in Atlantic Research Corp. causes us to reevaluate our precedents.   Notwithstanding this court's strict adherence to our precedents, we have made clear that those precedents may be reevaluated when there has been intervening authority.  See George Harms Constr. Co. v. Chao, 371 F.3d 156, 161 (3d Cir. 2004) ("We recognize that we may reevaluate

---

[4] The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction on appeal under 28 U.S.C. § 1291.

a precedent in light of intervening authority even without en banc consideration."); Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996) ("Although a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel . . . , a panel may reevaluate a precedent in light of intervening authority[.]").

Even though we must be particularly cautious in revisiting cases involving questions of statutory interpretation, a reevaluation of precedent is appropriate in this case. As the Supreme Court has explained, in "cases where statutory precedents have been overruled, the primary reason for the Court's shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress. Where such changes have removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies, the Court has not hesitated to overrule an earlier decision." Patterson v. McLean Credit Union, 491 U.S. 164, 173 (1989) (citations omitted).

The Supreme Court's decision in Atlantic Research Corp. is such intervening authority. It impels us to reevaluate our holdings in Reading and New Castle County because Atlantic Research Corp. weakens the conceptual underpinnings of those decisions.

Section 107 states that various parties, including the owner or operator of a facility, may be responsible for "any . . . necessary costs of response incurred by any other person consistent with the national contingency plan," § 107(a)(4)(B), and provides a cause of action to parties that incur cleanup costs but have not themselves been sued under § 106 or § 107. For years after the 1980 enactment of CERCLA, district courts almost unanimously found that § 107 contained an implied cause of action for contribution. See, e.g., United States v. New Castle County, 642 F. Supp. 1258, 1265-69 (D. Del. 1986) (holding that contribution right arises under federal common law); Colorado v. ASARCO, Inc., 608 F. Supp. 1484, 1489-91 (D. Colo. 1985) (same); Wehner v. Syntex Agribusiness, Inc., 616 F. Supp. 27,

11

31 (E.D. Mo. 1985) (holding that contribution right is implied from language of § 107(e)(2)).  However, with the enactment of § 113, the courts turned to that section and away from § 107 to provide the cause of action.

As we noted briefly above, we too veered away from § 107 in our decision in New Castle County, where we stated that § 113 provided a "potentially responsible person[] with the appropriate vehicle" to "recoup that portion of its expenditures which exceeds its fair share of the overall liability."  111 F.3d at 1122.  We further held that "a section 107 action brought for recovery of costs may be brought only by innocent parties that have undertaken clean-ups."  Id. at 1120 (emphasis in original).[5]  Similarly, in Reading, we held that a potentially responsible party may not seek contribution under § 107(a)(4)(B).  In fact, we stated "§ 113(f)(1) specifically permits an action for contribution to be brought in the absence of civil action under section 107."  115 F.3d at 1120 (internal punctuation and quotation marks omitted).

The trend toward application of § 113 was halted by the Supreme Court's decision in Cooper Industries, where the Court held that the plain language of § 113(f)(1) does not allow PRPs to bring contribution actions unless and until a related civil action is brought against them under either § 106 or § 107.  543 U.S. at 166.  The Court reserved judgment on the question whether PRPs who are not subject to an action under § 106 or § 107 may instead seek relief under § 107(a)(4)(B).

---

[5] Our imposition of the "innocent" standard on parties seeking to bring suit under § 107 is not based on the statutory text. Arguably, the "innocent" standard imposed by this and other circuits violates fundamental rules of statutory construction by imposing a requirement not evident on the statute's face. This court-created standard ignores the fact that § 107(a)(4)(B) plainly allows a private party plaintiff to be "any other person" besides the government, state, and Indian tribes and does not expressly exclude parties that may be responsible for a spill.  See Atlantic Research Corp., 551 U.S. ___, 127 S. Ct. at 2336.

12

In Reading and New Castle County, we assumed that all potentially responsible parties — those whose responsibility had been adjudicated and those who voluntarily admitted their responsibility — were "potentially responsible parties" who could recoup losses by bringing suit pursuant to § 113(f). Cooper Industries changed that premise, however, by holding that only a party who has in fact been held responsible (via adjudication or settlement with the EPA) may bring an action under § 113(f), whereas a party who concedes it is a PRP but whose responsibility has not been established may not. After the Cooper Industries decision, therefore, a PRP that had not been subject to suit or settled its liability had no recourse to recover cleanup costs under CERCLA because under our precedents it could not bring a § 107 claim, and under Cooper Industries, it could not bring a § 113 claim.

Following the decision in Cooper Industries, the Court of Appeals for the Eighth Circuit considered the effect of Cooper Industries in a case pending before it. In Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), Atlantic Research (a PRP) had sought partial reimbursement under both § 107 and § 113 from the United States for costs incurred in a voluntary environmental cleanup. While that litigation was ongoing, the Supreme Court decided Cooper Industries, thereby foreclosing Atlantic Research's claim under § 113 because it had not been subject to suit or otherwise settled its liability.

The district court before which the litigation was pending dismissed the complaint on the basis of the Eighth Circuit's precedent in Dico Inc. v. Amoco Oil Co., 340 F.3d 525 (8th Cir. 2003), holding that a PRP could not bring a claim under § 107 because it was not an innocent party. On appeal by Atlantic Research, the Eighth Circuit concluded that Cooper Industries "undermined Dico's reasoning for parties in Atlantic's position[,]" i.e., for a party who had not been sued or had not otherwise settled its liability. 459 F.3d at 830 n.4. The court explained that in a post-Cooper Industries world, PRPs are not foreclosed from obtaining relief under § 107. Id. at 834, 837 (concluding that barring Atlantic Research from a cost recovery action under § 107 would be "contrary to CERCLA's purpose"

13

to encourage voluntary cleanups and would be an "an absurd and unjust outcome"). See also Consolidated Edison Co. of New York v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005) (re-evaluating its prior precedent following Cooper Industries).

Our precedent in New Castle County and Reading was similar to the Eighth Circuit's precedent in Dico because we also assumed that § 113 was a viable basis for obtaining relief and that a § 107 action for cost recovery or contribution was unavailable. It is similarly clear that Cooper Industries undermined our precedent as well.

The Supreme Court decision thereafter in Atlantic Research Corp., which affirmed the Eighth Circuit's decision, is dispositive of the issue before us. Atlantic Research, a PRP, had contaminated the soil and groundwater at an ammunition facility with burned fuel, but the United States had also polluted the site. See 127 S. Ct. at 2335. Atlantic Research voluntarily cleaned up the site, even though it had not been the subject of a suit under § 106 or § 107. Id. It then sued the United States under both §§ 107(a) and 113(f) to recover a share of its voluntary cleanup expenses. Id. The Court, in a unanimous opinion authored by Justice Thomas, held that, although Atlantic Research could not sue the United States under § 113(f) in that case because no § 106 or § 107 action was pending or had been brought against Atlantic Research, it could bring a cost recovery claim under § 107(a). Id. at 2335-39.

More specifically, in Atlantic Research Corp. the Supreme Court concluded that PRPs may apply both §§ 107(a)(4)(B) and 113(f)(1) to recover cleanup expenses, but the two sections "provide two 'clearly distinct' remedies." Id. at 2337 (quoting Cooper Indus., 543 U.S. at 163 n.3). Specifically, "'CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B).'" Id. (quoting Cooper Indus., 543 U.S. at 163) (emphasis in original). Section 113(f) authorizes a PRP to seek recovery because of an inequitable distribution of common liability among liable parties "during or following" a suit under § 106 or

14

§ 107(a). See id. at 2338. Section 107(a), by contrast, "permits recovery of cleanup costs but does not create a right to contribution." Id. Under § 107(a), a PRP may "recover only the costs it has 'incurred' in cleaning up a site." Id. (quoting 42 U.S.C. § 9607(a)(4)(B)). Thus, in sum, the Court stated:

> the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." Consolidated Edison, 423 F.3d at 99; see also E.I. DuPont de Nemours, 460 F.3d at 548 (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

Id.

The Court's conclusion that "the plain language of subparagraph [§ 107(a)(4)](B) authorizes cost-recovery actions by any private party, including PRPs," id. at 2336 (citing Key Tronic, 511 U.S. at 818), thereby overruled our holding in DuPont, 460 F.3d at 518, that § 113 provided the sole cause of action to PRPs. Following Atlantic Research Corp., there is no doubt that, contrary to our precedents, a PRP may bring a cause of action for cost recovery under § 107 and need not rely upon § 113 as its exclusive remedy. See 127 S. Ct. at 2339.

Permitting parties who voluntarily incur cleanup costs to bring suit under § 107 comports with the fundamental purposes of CERCLA. As this court noted in Horsehead Industries, Inc.

15

v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001):

> The purpose of CERCLA is "to assure that the current and future costs associated with hazardous waste facilities, including post-closure costs, will be adequately financed and, to the greatest extent possible, borne by the owners and operators of such facilities."

Id. at 135 (quoting 42 U.S.C. § 9607(k)(6)(E)); see OHM Remediation Servs. v. Evans Cooperage Co., 116 F.3d 1574 (5th Cir. 1997) (noting CERCLA's broad, remedial purpose to facilitate prompt cleanup of hazardous waste sites and to shift costs of environmental response from taxpayers to parties who benefitted from wastes that caused harm); see also In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 206 (3d Cir. 2003) (stating that CERCLA's purpose is "making those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created") (citation and quotation marks omitted).

Voluntary cleanups are vital to fulfilling CERCLA's purpose. During deliberations on the SARA Amendments, Congress emphasized the importance of voluntary action, stating that "[v]oluntary cleanups are essential to a successful program for clean up of the Nation's hazardous substance pollution problem." H.R. Rep. No. 99-253, pt. 5, at 58 (1985), as reprinted in 1986 U.S.C.C.A.N. 3124, 3181; see also 131 Cong. Rec. 24725, 24730 (1985) (statement of Sen. Domenici) ("The goal of CERCLA is to achieve effective and expedited cleanup of as many uncontrolled hazardous waste facilities as possible. One important component of the realistic strategy must be the encouragement of voluntary cleanup actions or funding without having the President relying on the panoply of administrative and judicial tools available.").

Although supervised cleanups are to be encouraged wherever possible, they need not be encouraged at the expense of unsupervised cleanups. Under § 107(a)(4)(B), a party is liable for costs incurred in a cleanup (voluntary or otherwise) only

16

insofar as those costs are "costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). By the plain text of the statute, a party that seeks recovery for costs incurred in a cleanup that does not comport with the national contingency plan is without recourse. Because there has been no suggestion that DuPont's cleanup is in that position, it has stated a viable cause of action for cost recovery under § 107(a).[6]

For the reasons set forth, we will reverse the decision of the District Court with respect to any claim made by DuPont for costs incurred while undertaking voluntary cleanup efforts and remand for further proceedings in accordance with this opinion.[7]

_____

[6] This court considered DuPont's claims under § 107(a) notwithstanding its earlier voluntary dismissal of those claims, approved without prejudice by the District Court. It would be prudent, in light of developments in the case law, for DuPont to seek District Court approval to amend its complaint to specifically state a cause of action under § 107(a) once again. Atlantic Research, in the case decided by the Supreme Court, had amended its complaint following the decision in Cooper Industries. See 127 S. Ct. at 2335.

[7] DuPont has requested that we order briefing on the District Court's definition of "contribution" and that we revisit the viability of our decisions in New Castle and Reading. Our within opinion explicitly covers the latter issue. In addition, the Supreme Court's opinion in Atlantic Research makes clear the meaning of "contribution" and we see no reason to add to its discussion. The parties are free to proceed with that issue in the District Court on remand. We also leave for the District Court's consideration DuPont's claims with respect to the other fourteen sites.