**STEEL CORPORATION OF
the PHILIPPINES**

v.

**INTERNATIONAL STEEL SERVICES,
INC., Appellant.**

Nos. 08–1853, 08–2568.

United States Court of Appeals,
Third Circuit.

Argued Oct. 29, 2009.

Filed: Nov. 19, 2009.

Leonard Fornella (Argued), Babst, Calland, Clements & Zomnir, Pittsburgh, PA, for Appellants.

Paul W. Minnich (Argued), Alex E. Snyder, Sean E. Summers, Barley Snyder, York, PA, for Appellee.

Before: SMITH, FISHER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

International Steel Services, Inc. ("ISSI") appeals from an order of the District Court entering judgment against ISSI in favor of Steel Corporation of the Philippines ("SCP") and an order denying ISSI's motion for relief pursuant to Federal Rule of Civil Procedure 60(b). We will affirm.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

ISSI, a Delaware corporation headquartered in Pittsburgh, Pennsylvania, and SCP, a Philippine corporation, entered into two separate contracts relevant to this litigation. Under the Acid Regeneration Plant Supply and Installation Agreement ("ARP Contract"), entered into on April 1, 1996, ISSI agreed to construct an acid regeneration plant for SCP. Under the Iron Oxide Sales Agreement ("IOSA Contract"), entered into on April 15, 1997, ISSI agreed to purchase the iron oxide by-product of the plant. Both contracts contained the following arbitration provision:

"The validity, performance and enforcement of this Contract shall be governed by Philippine Laws. The parties agree that any dispute or claim arising out of this Contract shall be s[e]ttled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The proceedings on arbitration shall be conducted in Singapore. The arbitral award shall be final and binding on both parties."

(App. at A–57.) Separate disputes arose under each contract.

On September 18, 2002, ISSI commenced a claim against SCP under the ARP Contract before the Construction Industry Arbitration Commission of the Philippines. The Commission issued an award of $150,000 in ISSI's favor against SCP ("ISSI Award") on August 20, 2003.

On May 5, 2003, SCP instituted a separate claim against ISSI under the IOSA Contract in the International Chamber of Commerce International Court of Arbitration in Singapore. On November 3, 2004, the arbitrator issued a final award of $647,965.50 in SCP's favor against ISSI ("SCP Award"). The SCP Award contained the following provision:

"The applicable law of the arbitration proceedings is the Singapore International Arbitration Act. The validity, performance and enforcement of . . . the [IOSA Contract is] governed by the laws of the Philippines."

(App. at A–67.) ISSI has not petitioned for judicial review of this award in Singapore.

On August 19, 2004, ISSI filed a petition in the Philippines Regional Trial Court to vacate the SCP Award. Due to an alleged error in service that prevented SCP from receiving an order, on January 4, 2006, the Regional Trial Court declared SCP in default of ISSI's petition to vacate, thereby allowing ISSI to present ex-parte evi-

dence. In response, SCP filed an Urgent Motion for Reconsideration. There is no evidence that the Regional Trial Court ever ruled on this Motion. Instead, a Notice of Pre–Trial indicates that the parties were to attend a pre-trial conference on April 18, 2007. (Addendum Exhibit A.) In an order of that same date, the Regional Trial Court referred the matter to mediation and stayed further proceedings. (Addendum Exhibit B.) The mediation failed.

Meanwhile, on September 13, 2005, ISSI moved to execute the ISSI Award in the Philippines. On July 17, 2007, the Philippine Court of Appeals, in an appeal by SCP, set aside the Award on the basis that ISSI was obligated to pay SCP the greater sum of $647,965.50 under the SCP Award. The Court of Appeals also noted that the Philippine Regional Trial Court, over which the Court has appellate jurisdiction, did not have jurisdiction to set aside the SCP Award. (App. at A–656.)

On January 19, 2006, SCP filed a Petition to Confirm the SCP Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"), in the Court of Common Pleas of York County, Pennsylvania. Ultimately, the case was removed to federal court and transferred to the Western District of Pennsylvania. ISSI filed a motion for judgment on the pleadings, which the District Court denied on July 31, 2006.[1] On July 31, 2007, after a discovery phase, the parties filed cross motions for summary judgment.

On February 6, 2008, the District Court denied ISSI's motion for summary judgment, granted SCP's motion for summary judgment, and entered judgment in SCP's favor in the amount of $647,965.50.[2] ISSI filed a motion for relief pursuant to Federal Rule of Civil Procedure 60(b) to reduce

the judgment in the amount of $150,000 by offsetting the SCP Award by the amount of the ISSI Award. The District Court denied the motion on April 23, 2008. ISSI filed a timely appeal.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 1294. "The District Court's grant of summary judgment and judgment on the pleadings is subject to plenary review." *E.I. Du-Pont de Nemours & Co. v. United States,* 508 F.3d 126, 131 (3d Cir.2007). This Court will "construe all facts and inferences in the light most favorable to the non-moving party, and '[j]udgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Id.* (citations omitted). Likewise, "[w]e review de novo the District Court's interpretation of the [New York] Convention." *Admart AG v. Stephen & Mary Birch Foundation, Inc.,* 457 F.3d 302, 307 (3d Cir.2006). Finally, "[w]e review grants or denials of relief under Rule 60(b) ... under an abuse of discretion standard." *Budget Blinds, Inc. v. White,* 536 F.3d 244, 251 (3d Cir.2008).

## III.

ISSI sets forth three arguments on appeal. First and foremost, ISSI contends that the District Court erred in holding that ISSI does not have a valid defense under either Articles V(1)(e) or V(2)(b) of the New York Convention, and thus that the Court erred in enforcing the SCP Award. In the alternative, ISSI argues that the District Court erred in refusing to offset the SCP Award by the smaller ISSI Award pursuant to Federal Rule of Civil

---

**1.** The District Court also denied reconsideration of the motion on August 28, 2006.

**2.** The District Court denied ISSI's motion for reconsideration on February 21, 2008.

692

Procedure 60(b)(5). We will address each contention in turn.

A.

■ ISSI argues that under Article V(1)(e) of the New York Convention, the Philippine Regional Trial Court's entry of default against SCP on ISSI's petition to vacate the SCP Award precludes a United States court from enforcing the Award. The applicable language of Article V(1)(e) provides as follows:

"1. Recognition and enforcement of the award may be refused ... only if ...

...

(e) The award ... has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. V(1), June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517. To prevail, ISSI must demonstrate that the Philippines is a country with primary jurisdiction by showing that the Philippines is a country "under the law of which" [3] the SCP Award was made. [4] ISSI is unable to do so.

The Sixth Circuit held in *M & C Corp. v. Erwin Behr GmbH & Co., KG* that the Article V(1)(e) language "under the law of which" " 'refers exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law *under which the arbitration was conducted.*' " 87 F.3d 844, 848 (6th Cir.1996) (emphasis added) (quoting *International Standard Electric Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172, 178

(S.D.N.Y.1990)); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 290 (5th Cir.2004) ("Under the New York Convention, the rulings of the Tribunal interpreting the parties' contract are entitled to deference."). Since the SCP Award indicates that the arbitrator applied Singapore procedural law—"The applicable law of the arbitration proceedings is the Singapore International Arbitration Act" (App. at A–67)—Singapore, not the Philippines, is the country with primary jurisdiction.

In response, ISSI contends that the relevant question is not what procedural law the arbitrator applied, but what procedural law the parties agreed *should* be applied. However, even assuming, *arguendo,* that we look to the parties' choice of procedural law, and not the law applied by the arbitrator, ISSI's argument still fails, as ISSI has not demonstrated that the parties agreed in the IOSA Contract to an application of Philippine procedural law.

Although the Third Circuit has not addressed this issue, the Fifth Circuit held in *Karaha Bodas Co., L.L.C.* that "[u]nder the New York Convention, an agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration." 364 F.3d at 291. The Fifth Circuit sensibly explained that any other presumption would be illogical:

"Authorities on international arbitration describe an agreement providing that one country will be the site of the arbitration but the proceedings will be held under the arbitration law of another

---

**3.** The SCP Award was made in Singapore; therefore, the Philippines is not a country "in which" the Award was made.

**4.** Since the Philippine Regional Trial Court never ruled on SCP's Urgent Motion for Reconsideration of the default judgment, but instead ordered mediation, it is questionable whether the SCP Award has indeed been "set aside or suspended." However, as ISSI is unable to demonstrate that the Philippines is a country with primary jurisdiction, we need not reach this issue.

country by terms such as 'exceptional'; 'almost unknown'; a 'purely academic invention'; 'almost never used in practice'; a possibility 'more theoretical than real'; and a 'once-in-a-blue-moon set of circumstances.' Commentators note that such an agreement would be complex, inconvenient, and inconsistent with the selection of a neutral forum as the arbitral forum."

*Id.* at 291 (footnotes omitted). We will apply the same presumption here. Accordingly, ISSI bears the burden of showing that Philippine procedural law, not forum procedural law, applies to the arbitration of the SCP Award.

ISSI's primary argument in support of Philippine procedural law is that the parties necessarily agreed to an application of that law by stating in the IOSA Contract that "enforcement" of the Contract would be governed by Philippine law.[5] This is insufficient. Given the difficulty Singapore would likely have in researching, deciphering, and applying another country's procedural law, the use of the term "enforcement," as opposed to the term "procedure," cannot in and of itself create the "once-in-a-blue-moon set of circumstances" where the forum applies another country's procedural law. *Id.* at 291.

The analogous facts of *Karaha Bodas Co., L.L.C.* support this determination. The litigation in *Karaha Bodas Co., L.L.C.* arose out of an arbitral award made in Switzerland regarding contracts negotiated and allegedly breached in Indonesia. *Id.* at 281. Like the instant case, the parties expressly agreed prior to arbitration that Switzerland would be the site of arbitration and that Indonesian substantive law would apply. *Id.* at 290. Based on these facts, the Fifth Circuit ultimately held that the Swiss tribunal properly applied Swiss procedural law.[6] *Id.* at 293. Similarly, ISSI and SCP expressly agreed to use the substantive law of one country—the Philippines—while designating another country—Singapore—as the forum, but did not expressly agree to a specific country's procedural law. Therefore, following the Fifth Circuit, we find that ISSI has failed to "rebut the strong presumption that designating the place of the arbitration also designates the law under which the award is made," *id.* at 292, and thus that the Singapore International Court of Arbitration properly applied Singapore procedural law.

In summary, the Philippines is not a country with primary jurisdiction over the SCP Award, and the District Court did not err in holding that ISSI has no defense

5. ISSI attempts to buttress this argument with two additional points, neither of which has merit. First, ISSI argues that the Rules of Conciliation and Arbitration of the International Chamber of Commerce, and in particular Article 15(1), do not limit parties' choice of law. This argument does not help ISSI meet its burden because there is still insufficient evidence that ISSI and SCP actually chose Philippine procedural law over forum procedural law in the IOSA Contract.

Second, ISSI asserts that the deposition testimony of Abeto Uy, the President and Chairman of SCP, and Manuel Pamaran, SCP's expert witness on the application of Philippine law, indicates that SCP clearly understood that Philippine procedural law was

to apply. However, contrary to ISSI's assertion, these depositions demonstrate only that Uy and Pamaran neither knew nor understood which procedural law governed the SCP Award.

6. *Karaha Bodas Co., L.L.C.* was arguably a more difficult case. Unlike the instant facts, the parties' contract in *Karaha Bodas Co., L.L.C.* referenced certain Indonesian civil procedure rules. Nevertheless, the Fifth Circuit held that the procedural references "fall far short of an express designation of Indonesian procedural law necessary to rebut the strong presumption that designating the place of the arbitration also designates the law under which the award is made." 364 F.3d at 292.

under Article V(1)(e) of the New York Convention.[7]

B.

■ Similarly, ISSI contends that under Article V(2)(b) of the New York Convention, enforcing the SCP Award would violate the fundamental principles of res judicata and judicial comity and would run contrary to the public policy against forum shopping in the United States. The relevant provision of Article V(2)(b) provides as follows:

"2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

. . .

(b) The recognition or enforcement of the award would be contrary to the public policy of that country."

Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. V(2), June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517. ISSI argues that because the validity of the SCP Award was already pending in the Philippines, SCP's attempt to enforce the Award in the United States was improper. Accordingly, ISSI asks that we defer to the courts of the Philippines and refrain from enforcing the Award.

ISSI's claim is without merit. To start, we must review Article V public policy defenses narrowly. *Admart AG*, 457 F.3d at 308 ("courts have strictly applied the Article V defenses and generally view them narrowly"). "Enforcement of foreign arbitral awards may be denied [based on the New York Convention's public policy

defense] only where enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir.1974). Here, ISSI's contentions not only do not violate the public policy of the United States, but they contravene the very purpose of the New York Convention. "The principal purpose for acceding to the [New York] Convention was to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts.'" *Admart AG*, 457 F.3d at 307 (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Accordingly, parties may bring suit to enforce awards notwithstanding the existence of ongoing proceedings elsewhere. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*, 335 F.3d 357, 366–67 (5th Cir.2003) ("Under the [New York] Convention, a court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered. Furthermore, an American court and courts of other countries have enforced awards, or permitted their enforcement, despite prior annulment in courts of primary jurisdiction."). *See also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir.1997) ("The [New York] Convention . . . eradicat[ed] the requirement that a court in the rendering state recognize an award before it could be taken and enforced abroad.").

Applying the foregoing principles to the instant case, SCP was entitled to bring

---

7. Although certainly not dispositive, it is worth noting that the Philippine Court of Appeals has also stated, albeit in dicta, that the

Philippine Regional Trial Court did not have jurisdiction to set aside the SCP Award. (App. at A–656.)

suit to enforce the SCP Award in the United States—where ISSI's assets are located—even though a motion to vacate the SCP Award was pending in the Philippines. Enforcement of the SCP Award does not violate this country's "most basic notions of morality and justice." *Parsons & Whittemore Overseas Co., Inc.*, 508 F.2d at 974. Therefore, the District Court did not err in holding that ISSI does not have an Article V(2)(b) public policy defense against enforcement of the SCP Award in the United States.

## C.

Lastly, ISSI challenges the District Court's denial of its motion to offset the SCP Award by the ISSI Award in the amount of $150,000 pursuant to Federal Rule of Civil Procedure 60(b)(5). Because the parties have since resolved this issue,[8] we do not need to address it here.

## IV.

For the foregoing reasons, we will affirm the orders of the District Court.

---

**8.** The parties agreed at oral argument to offset the Awards. Their subsequent stipulation provides, "the Philippine arbitration award in favor of ISSI may be offset against and deducted from the Singapore arbitration award and from the judgment entered in this action in favor of SCP." The agreement calculates the SCP and ISSI Awards, together with interest and costs through October 31, 2009, at $789,427.10 and $281,839.57, respectively. The parties will resolve the continuing calculation of interest after October 31, 2009.