**Michael SERY; Matthew Sery; David Sery, Appellants**

v.

**FEDERAL BUSINESS CENTERS, INC.; Peter C. Visceglia; Christine Kanter; Frank D. Visceglia, Jr.**

No. 08–4623.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 12, 2010.

Opinion Filed: Feb. 18, 2010.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

OPINION

BARRY, Circuit Judge.

This securities case, in which the shareholders of a family business find themselves in a bitter dispute about money and power, revolves around the interpretation of a provision of the New Jersey Business Corporation Act, N.J.S.A. 14A:1–1 to 17–18 (the "Act"). The minority shareholder protection provision of the Act, found at N.J.S.A. 14A:12–7(1)(c) (the "Provision"), protects minority shareholders from mismanagement, fraud, illegal conduct and abuse of authority of managers and directors of a corporation, but the Provision only applies to corporations "having 25 or less shareholders." The family business in this case has either 34 or 19 shareholders, depending upon the interpretation of the Provision.

Michael Sery and his brothers (together, the "Serys") sued Federal Business Centers, Inc. and others (together, "FBC"), seeking the Provision's minority shareholder protection. The District Court dismissed the case, holding that the Provision does not apply to FBC because it has more than 25 shareholders. The issue is whether 15 trusts, which each hold shares of FBC for the benefit of certain family members, who are also shareholders in their own right, count as "shareholders" for purposes of the Provision. The Court held that the plain meaning of the Act requires counting the trusts as shareholders. The Court's statutory interpretation and grant of summary judgment are subject to plenary review. *E.I. DuPont de Nemours and Co. v. United States,* 508 F.3d 126, 131–32 (3d Cir.2007). We will affirm.

The District Court's well-reasoned opinion relies primarily on the principle of statutory construction which holds that, when the statutory language is clear and unambiguous, the legislature's intent is best divined by reference to the plain meaning of a statute. *Register v. PNC Fin. Servs. Group, Inc.,* 477 F.3d 56, 67 (3d Cir.2007). The language of the Provision is clear and unambiguous, authorizing a cause of action on proof that,

> [i]n the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.

N.J.S.A. 14A:12–7(1)(c). The definitions provision of the Act explains that "unless the context otherwise requires, the term ... 'Shareholder' means one who is a holder of record of shares in a corporation." N.J.S.A. 14A:1–2.1.[1]

It is undisputed that there are 34 holders of record of shares in FBC. Thus, the Provision, which applies only to corporations having 25 or fewer shareholders, does not afford the Serys a remedy. The Serys argue, however, that FBC is "owned collectively and exclusively by 19 members of [the] family," (Serys Br. at 16), and that

the Act should be liberally construed so as to avoid double-counting certain family members, who own shares directly and as beneficiaries of various trusts. The Serys contend that only the beneficial owners (the 19 family members) should be counted for purposes of determining whether the Provision applies. To accept that contention, however, would fly in the face of the plain meaning of the Act, which defines "shareholder" only as the holder of record without mentioning beneficial ownership, and nothing in the Provision suggests that the Court should consider beneficial ownership when counting the number of shareholders. Although the Serys' are correct that the Act should be liberally construed,[2] N.J.S.A. 14A:1–1(2), we may not construe a statute in contravention of its plain meaning.

The Serys make much of the text introducing the Act's definitions, which provides that the definitions apply "unless the context otherwise requires" (the "Context Clause"). N.J.S.A. 14A:1–2.1. Neither party provides an analysis of the legislative history of the Act's Context Clause, but FBC cites *Ruefenacht v. O'Halloran,* 737 F.2d 320 (3d Cir.1984), for the proposition that the Context Clause does not permit us to rewrite a statutory definition unless "a statutory definition appears in a context in which the definition cannot sensibly be applied." (FBC Br. at 15–16.) In *Ruefenacht,* we interpreted the context

---

1. The Serys point to a separate and factually unrelated statute—the Shareholder Protection Act, 14A:10A1 to –6 (the "SPA"), which was enacted as an "addition to the requirements" of the Act, N.J.S.A. 14A:10A–1—arguing that the SPA "expressly incorporates the concept of beneficial ownership into the definition of 'shareholder,' " (Sery Br. at 23), by providing a definition of "[i]nterested stockholder" which applies only to "beneficial owners." We may not speculate (and we have no reason to believe) that the New Jersey legislature intended the terms "interested stockholder" and "shareholder" to be synonymous.

2. The Serys make reference to the 1968 Commissioner's Comment, which explains that the Act should be liberally construed; however, the Serys omit an important part of the comment, which clarifies that New Jersey corporate laws have been "characterized by the New Jersey courts as being liberal corporation laws, offering a favorable corporate climate." *See* Comment, N.J.S.A. 14A:1–1. The Serys' preferred interpretation is inconsistent with this objective.

clauses of two federal securities laws, rather than the Act. Nonetheless, in the absence of guidance about the New Jersey legislature's intent in drafting the Context Clause, *Ruefenacht* informs our conclusion that the Context Clause was not designed to empower courts to expand the definition of shareholder. Moreover, the context here does not "require" any alteration of the definition of shareholder.

The Serys also argue that we should overlook the plain language of the Provision, based on the less-often-cited, but equally important, principle of statutory construction which holds that when the literal application of statutory language would produce an outcome demonstrably at odds with the statute's purpose or would result in an absurd outcome, a court must look beyond the plain meaning of the statutory language. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir.2006) ("A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results."); *United States v. Zats*, 298 F.3d 182, 187 (3d Cir.2002) (refusing to "read a text to produce absurd results [that are] plainly inconsistent with the drafters' intentions").

The outcome of a plain language interpretation is neither demonstrably at odds with the statute's purpose nor absurd. The Act was designed, *inter alia*, "to give special recognition to the legitimate needs of the close corporation," N.J.S.A. 14A:1–1(3)(c), by providing "limited bases for statutory relief," [3] *Brenner v. Berkowitz*, 134 N.J. 488, 634 A.2d 1019, 1027 (1993). In enacting the Provision, "the Legislature demonstrated its intent to increase the protection to minority shareholders who are powerless within a [close] corporation, as well as powerless to leave." *Id.* Our decision does not frustrate, or even concern that purpose. The issue before us is not the quality of the protections afforded by the Provision but, rather, which corporations' shareholders are entitled to those protections. The Provision clearly applies only to companies with 25 or fewer holders of record of shares of stock. FBC has more than 25 holders of record of shares of stock, and so it does not implicate the protections of the Provision.

In the same vein, the Serys argue that FBC, having only 19 beneficial owners, is a close corporation of the sort the legislature determined has special needs, and thus that its shareholders require special protection.[4] However, the text of the Provision does not cover "close corporations," but only corporations "with 25 or less" holders of record of shares of the corporation. N.J.S.A. 14A:12–7(1)(c). Thus, the Serys' argument does not demonstrate that the outcome here is at odds with the purpose of the legislation.[5]

---

**3.** The related provision in the Model Business Corporation Act Annotated § 14.30(b)(2) (4th ed.2008) (the "Model Act Provision") has a threshold of 300 shareholders, and other requirements.

**4.** The Serys proffer other facts which are appealing, but are more appropriate for the legislature. For example, FBC appears to bear all the hallmarks of a closely-held corporation, including, for one thing, that its board of directors has always consisted of family members, and only family members (never more than nineteen people) have ever had a beneficial interest in company stock. The Serys point to the Model Act Provision, which employs a variety of characteristics to identify corporations to which a minority oppression provision applies, but the New Jersey Provision at issue handles it differently, and looks only to the number of holders of record of a corporation's stock.

**5.** The Serys' cite *Berger v. Berger*, 249 N.J.Super. 305, 592 A.2d 321 (N.J.Super.Ct. Ch. Div.1991), claiming that *Berger* holds that a beneficial owner can "be considered a 'minority shareholder' for the purposes of Section 14A:12–7(1)(c)." *Berger*, which is not controlling, is not nearly so broad, and, instead, holds that a beneficial owner has standing to bring a dissolution suit under New

Finally, the Serys argue that it is absurd[6] to refuse them "the opportunity to seek the protection provided to minority shareholders of close corporations ... merely because these three young men own their shares both individually and though trusts," (Sery Br. at 40), but the record is devoid of evidence, such as copies of all the trust documents, which might provide support for this argument.[7] The real issue appears to lie not in the outcome of this case, but in the legislature's preferred method of identifying the corporations which fall within the ambit of the Provision. This matter of policy is for the New Jersey legislature, not for us.

We will affirm the order of the District Court dismissing the Serys' amended complaint.

Jersey law. *Berger* provides us with no authority to ignore the plain meaning of the Provision.

**6.** Relying on *Dutton v. Wolpoff and Abramson,* 5 F.3d 649, 653 (3d Cir.1993), the Serys argue that "even when the plain meaning [does] not produce absurd results but merely an unreasonable [result] plainly at variance with the policy of legislation as a whole this Court has followed that purpose rather than the literal words." (Sery Br. at 39–40.) Here, the outcome is neither unreasonable nor plainly at variance with the policy of the legislation, which is to protect minority shareholders of corporations with fewer than 25 shareholders.

**7.** The Serys offer a hypothetical scenario where the outcome of this case might be absurd: a corporation could abuse the Provision by creating superfluous trusts in order to inflate the quantity of shareholders in a corporation and avoid application of the Provision. There is no evidence that such is the case here. The Serys' hypothetical outcome may be absurd, but the real outcome is not.