**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2919

_____

RONALD A. MAJEWSKI,
                                            Appellant

v.

GENE FISCHI, Warden; SAMUEL HYDER; JOSEPH MORRIS, Deputy Warden and
Work Release Counselor; TONY SEIWELL, Current Business Agent & Support Staff
Officer; LABORERS INTERNATIONAL UNION  OF NORTH AMERICA
LOCAL-1300; GREG SKREPENAK, Chairman; TODD VONDERHEID; STEVE
URBAN; WISTER YUHAS; ROBERT PAYNE; ROWLAND ROBERTS, Former Dep.
Warden; LUZERNE COUNTY; LUZERNE COUNTY CORRECTIONAL FACILITY

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 05-cv-02396)
District Judge:  Honorable James M. Munley

_____

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2010

_____

Before: McKEE, BARRY and GREENBERG, Circuit Judges

(Opinion Filed: March 30, 2010)

_____

OPINION

_____

BARRY, Circuit Judge

## I.

Because we write only for the parties, we set forth only the facts relevant to the various claims. Ronald Majewski began working at the Luzerne County Correctional Facility ("LCCF") in 1991. In 1994, he suffered a work-related injury. In October 2000, he returned to work as a control booth guard – a permanent light-duty job created for him. Because his colleagues were apparently envious of his light-duty position, in June 2002, they circulated a grievance complaining that his employment created safety issues. Majewski informed Warden Gene Fischi of the grievance and complained about being denied overtime, and Majewski's counsel sent Fischi a letter regarding the grievance. In response, a deputy warden issued a warning regarding harassment. There is no evidence that the grievance was ever filed.

On November 14, 2002, Majewski was suspended for three days without pay due to absenteeism when his car broke down en route to work. When he called LCCF to ask for transportation, help was denied. Majewski was not permitted to use a sick or emergency vacation day to cure his absence. The LCCF Code of Ethics categorizes "absenteeism" as a third-level offense. A second such offense[1] merits a three-day suspension. In December 2002, Majewski's counsel sent a letter to Fischi alleging that the suspension was retaliatory.

---

[1] Majewski was previously absent on July 17, 2001.

According to Fischi, as long as Majewski timely "called out" and claimed that he could not work due to his work-related injury, he was not disciplined and was paid by utilizing a sick, personal, stress. or vacation day. If Majewski "called out" due to his work-related injury but had exhausted his accrued, paid time off, he would not be disciplined, but would be given the time off without pay. On April 17, 2003, Majewski filed a complaint with the Equal Employment Opportunity Commission contending that his suspension was in retaliation for objecting to the grievance that had been circulated about him.

On December 7, 2004, at approximately 2:30 a.m., LCCF employees witnessed Majewski exhibiting signs of intoxication. After approximately seven attempts on a breathalyzer (during some of which Majewski was not blowing hard enough), he recorded a blood-alcohol content of .186%. He denies being intoxicated.

Later that day, Majewski returned, met with LCCF officials, and was suspended, without pay, pending termination. That action was in accordance with the Code of Ethics, which defined intoxication at work as a first-level offense, permitting dismissal. After the meeting, Majewski asked Deputy Warden Samuel Hyder, "[w]hy are they doing this to me?" (A535.) Hyder pointed upwards and said "[t]hey want you fired." (*Id.*) Majewski entered alcohol rehabilitation for nineteen days of inpatient treatment.

On January 5, 2005, Majewski requested medical leave pursuant to the Family Medical Leave Act ("FMLA") to complete outpatient rehabilitation. On January 25,

3

2005, his request for FMLA leave was granted, retroactive to December 7, 2004. His leave expired in mid-March 2005.

In February 2005 and March 2005, Majewski was presented with – and rejected – numerous versions of a last chance agreement. The agreement, in sum, permitted him to return to work if he agreed to complete his outpatient treatment and report to work sober. In late August 2005, Fischi informed Majewski that he would recommend his termination at the next prison board meeting. On September 19, 2005, Majewski was terminated.

In January 2006, Majewski filed an amended complaint alleging violations of 42 U.S.C. § 1983 (asserting violations of the First, Fourth, Fifth, and Fourteenth Amendments), 42 U.S.C. § 1985, the Americans with Disabilities Act, the Pennsylvania Human Relations Act ("PHRA"), and the FMLA, and causes of action for conspiracy, intentional infliction of emotional distress, and wrongful discharge.

After the defendants filed a motion for judgment on the pleadings, improperly captioned as a motion to dismiss, the District Court dismissed Majewski's § 1983 claim premised on violations of the Fourth, Fifth, and Fourteenth Amendments; § 1985 claim; and intentional infliction of emotional distress claim. Following motions for summary judgment and supplemental briefing, the Court granted summary judgment in the defendants' favor on all remaining claims.

**II.**

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1367(a).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

The District Court's grant of judgment on the pleadings and summary judgment is subject to plenary review.  *E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 131 (3d Cir. 2007).  We "construe all facts and inferences in the light most favorable to the non-moving party, and judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Id.* at 132 (quotation and alteration omitted).

## III.

**1. First Amendment**

A threshold inquiry focuses on whether Majewski's speech involved a matter of public concern.  *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).  "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997) (quotation omitted).  However, "public speech cannot constitute merely personal grievances." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (quotation and editing marks omitted); *see also Sanguigni v. Pittsburgh Bd. of Pub. Ed.*, 968 F.2d 393, 399 (3d Cir. 1992) ("speech related solely to mundane employment grievances" is not matter of public concern).

Majewski's speech was personal in nature.  His complaints to Fischi and his counsel's letters to Fischi and the Prison Board concerned only his personal grievances.

5

"Purely personal" speech is not protected. *See Brennan*, 350 F.3d at 412.

## 2. Fourth Amendment

When evaluating the constitutionality of an employee test for intoxication – such as the breathalyzer test challenged here – we must consider: "(1) the nature of the privacy interest upon which the search intrudes; (2) the extent to which the search intrudes on the employee's privacy; and (3) the nature and immediacy of the governmental concern at issue, and the efficacy of the means employed by the government for meeting that concern." *Wilcher v. City of Wilmington*, 139 F.3d 366, 374 (3d Cir. 1998).

First, Majewski enjoyed a diminished expectation of privacy based on his position as a corrections officer. "[T]he safety concerns associated with a particular type of employment" may "diminish an employee's expectation of privacy." *See id.* (firefighters); *see also Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672 (1989) (customs officials). Corrections officers, like firefighters and customs officials, are safety-sensitive employees. "[E]ven a momentary lapse of attention can have disastrous consequences." *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 628 (1989).

Second, breathalyzer tests are minimally intrusive. Breath tests "do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment." *Id.* at 625. Moreover, their results "reveal the level of alcohol in the employee's bloodstream and nothing more." *Id.* Third,

6

the immediacy of conducting a breathalyzer test is patent because alcohol is "eliminated from the bloodstream at a constant rate." *Id.* at 623. These factors all indicate that the breathalyzer test at issue here was not an unreasonable search.

### 3.    ADA

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), after a plaintiff has established a prima facie case of disparate treatment, the burden shifts to the defendant to state a legitimate, nondiscriminatory reason for its action. If the defendant meets that burden, the presumption of discriminatory action raised by the prima facie case is rebutted. The plaintiff may respond by showing that the defendant's proffered reason was pretextual. To prove that an explanation is pretextual, a plaintiff must "cast[] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication . . . or . . . allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (quotation omitted). A plaintiff may defeat summary judgment by "'(I) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* (quotation omitted).

Assuming *arguendo* that Majewski set forth a *prima facie* case, Luzerne County

and LCCF offered legitimate, non-discriminatory reasons for each non-trivial adverse employment action taken against him, including the write-ups, suspensions, and his termination.[2] Specifically, each disciplinary action was supported by Majewski's own misconduct and imposed in accordance with the Code of Ethics.

Majewski, however, failed to demonstrate that the proffered non-discriminatory reasons were pretextual. Viewing the evidence in the light most favorable to him, there was insufficient competent evidence from which a factfinder could either disbelieve the stated reasons or conclude that discrimination was the motivating or determinative factor in the adverse employment actions. All that Majewski submitted in support of his claim that Luzerne County and LCCF's reasons were pretextual were: (1) his allegation that non-disabled corrections officers were not disciplined similarly; (2) his conclusion that the breathalyzer was known to be inaccurate; and (3) Hyder's statement, following Majewski's suspension for being intoxicated, that "[t]hey want you fired." Not only is none of this admissible, but conclusory allegations are insufficient to establish a genuine issue of material fact.[3] We reject without further discussion Majewski's submission of an

---

[2] Majewski also claims that he was denied overtime due to his work-related injury, but offers no evidence substantiating the allegation. Because "factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment," *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972), the record is insufficient to establish that Majewski was denied overtime.

[3] Although the District Court did not conduct a burden-shifting analysis, we may affirm on "any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).

8

incident report indicating that Donald Oravic, a chef at LCCF – not a corrections officer – arrived late for work and was permitted to continue his shift, and newspaper articles concerning Emory Ishley, Jr., a cook at LCCF, who was suspended after registering a .013% blood alcohol content while at work but reinstated because it was likely that his blood alcohol content did not qualify him as being "intoxicated," an undefined term in the Code of Ethics. Majewski's .186% blood alcohol content would qualify as "intoxicated" under any definition of the term.[4]

### 4.    Equal Protection

Majewski contends that he was denied equal protection because the Code of Ethics was selectively enforced against him. To establish a selective enforcement claim, a plaintiff must demonstrate that other, similarly situated individuals were not adversely treated and that the selective treatment was based on an "unjustifiable standard such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quotation omitted).

Majewski cannot satisfy either prong of the test enumerated in *Hill*. He offers insufficient evidence that the Code of Ethics was not applied to other corrections officers or that any purported selective enforcement was premised on an unjustifiable standard.

---

[4] The same analysis applies to the PHRA claim. *See Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 979 n.1 (3d Cir. 1998).

Even a cursory reading of *Hill* underscores the evidentiary shortfall of Majewski's claim.

**5.     FMLA**

Next, Majewski claims that Fischi, Hyder, and Deputy Warden Joseph Morris interfered with his rights under the FMLA. The FMLA entitles eligible employees to "12 workweeks of leave during any 12-month period" if the employee has a qualifying serious health condition. *See* 29 U.S.C. § 2612(a)(1)(D). The statute further provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided." 29 U.S.C. § 2612(d)(2)(B).

"[T]o assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). An employer interferes with the exercise of FMLA by refusing to authorize FMLA leave or "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

After being suspended without pay due to his intoxication, Majewski requested FMLA leave to continue outpatient alcohol rehabilitation. On January 25, 2005, Majewski's request for FMLA leave was granted, retroactive to December 7, 2004 – the date his suspension began.

At the time of his request for FMLA leave, Majewski did not ask to use his

10

accrued time prior to commencement of his FMLA leave. Moreover, the FMLA states that an employer "may require" an eligible employee to use accrued, paid leave prior to commencement of the twelve-week FMLA leave. 29 U.S.C. § 2612(d)(2)(B). The FMLA does not, as Majewski contends, *require* an employer to do such. Nevertheless, even if Majewski was permitted to utilize any accrued, paid leave, such leave "run[s] *concurrently with* the unpaid FMLA leave." 29 C.F.R. § 825.207(a) (emphasis added). Thus, Majewski's use of any accrued sick and/or personal leave would not have impacted the statutorily required twelve weeks of FMLA leave that he received.

Furthermore, the proposed last chance agreements did not interfere with, restrain or deny Majewski's exercise of his FMLA rights. The request that Majewski sign a last chance agreement had no impact on his ability to obtain FMLA benefits.

## 6. Wrongful Discharge

Majewski also contends that he was wrongfully discharged. In Pennsylvania, "the tort of wrongful discharge is available *only* when the employment relationship is at-will." *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 38 (Pa. 1986) (emphasis added). Thus, where an employee, like Majewski, is not an at-will employee, but rather protected by a collective bargaining agreement, the employee must seek redress through the agreement's grievance procedures. *Ross v. Montour R.R. Co.*, 516 A.2d 29, 32 (Pa. Super. Ct. 1986).

## 7. Civil Conspiracy

Finally, Majewski alleges that the defendants engaged in a civil conspiracy to

deprive him of his rights under state and federal law. However, because civil conspiracy depends on the performance of some underlying tortious act, the conspiracy itself is not independently actionable. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000); *GMH Assocs. v. Prudential Realty Group*, 752 A.2d 889, 905 (Pa. Super. Ct. 2000). Because Majewski failed to establish an underlying tort, his civil conspiracy claim fails as a matter of law.

## IV.

For the foregoing reasons, we will affirm the orders of the District Court.