## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Jack D. Workman

v.

Commonwealth of Virginia,
Dep't of Corrections

February 1, 2011

Case No. (Civil) CL10-2423

BY JUDGE JOHN W. BROWN

Petitioner appeals a final decision upholding his termination from the Department of Corrections for a positive marijuana result to a non-random oral swab drug test on April 15, 2009. Petitioner seeks reversal of the final decision below and reinstatement with back pay in addition to attorney's fees. In the alternative, Petitioner requests remand to the hearing officer for further proceedings, presumably consistent with a reversal.

Petitioner alleges in his Notice of Appeal that the termination and subsequent Agency determinations violated his Fourth Amendment rights, rights of procedural and substantive due process, and rights under Virginia administrative law. Petitioner has now abandoned his due process claims.

Because the test leading to petitioner's positive result was administered in violation of the Fourth Amendment, the Court reverses the decision below on this ground, without reaching petitioner's administrative law argument.

### I. *Jurisdiction and Standard of Review*

This Court has jurisdiction over Workman's appeal pursuant to Virginia Code § 2.2-3006(B).

The standard of review in this case is likewise provided by § 2.2-3006(B): whether the final agency decision is "contradictory to law."

The circuit court thus fulfills a role in a statutory "tripartite system": the hearing officer serves as the finder of fact, the Department of Human Resource Management determines whether the hearing officer's decision is consistent with agency policy, and neither the factual nor the procedural determinations are subject to judicial review, "only that part of the grievance determination 'contradictory to law'." *Virginia Dep't of State Police v. Barton*, 39 Va. App. 439, 445 (2002) (citing the statutory predecessor to § 2.2-3006). This uniquely limited standard of review is perhaps the only portion of this case governed by well-established Virginia law. *See, e.g., id.; see also Commonwealth v. Needham*, 55 Va. App. 316, 324–25 (2009); *Virginia Dep't of Trans. v. Stevens*, 53 Va. App. 654, 661 (2009); *Tatum v. Virginia Dep't of Agric. and Consumer Servs.*, 41 Va. App. 110, 122 (2003) (citing *Barton*, 39 Va. App. at 445).

## II. *Statement of Facts*

Petitioner was a captain at the Indian Creek Correctional Facility who held a commercial driver's license ("CDL") until 2005. Pursuant to Department of Corrections ("DOC" or "Agency") policies, employees holding CDLs and employees in security positions are subject to random drug testing. Workman was employed in a security position and due to an agency error, he was not removed for the list of CDL employees after 2005.

In January 2009, Workman was randomly selected for urinalysis testing under the Agency's CDL testing program, and, despite his protests to the effect that he no longer possessed a CDL, he was required to take the test. On January 20, 2009, Workman's test returned a result of "negative, dilute." Agency policy mandated that Workman be retested "as soon as possible" as a result of the "negative, dilute" result. However, Workman was not retested immediately and did not receive notification of his result.

In April 2009, the Agency's Central Human Resource staff conducted an audit of the Human Resource Department and discovered that Workman had not received a follow-up test. Consequently, Workman was summoned and administered an oral fluid test, outside the ordinary testing procedures, in order to "clear [the Agency] up for the audit." (Hr'g Tr. 36, Jan. 4, 2010.) On April 13, 2009, the results of this oral fluid test yielded a positive result for marijuana. Workman was consequently terminated from employment on April 15, 2009, and subsequently grieved his termination. Following a series of hearings before an Agency hearing officer and administrative reviews before the Department of Human Resource Management ("DHRM"), petitioner's notice of termination was upheld.

Petitioner thereafter appealed to this Court on October 14, 2010, and oral argument was heard on January 24, 2011.

### III. *Validity of the Second Test Under the Fourth Amendment*

Inasmuch as the hearing officer's decision does not set out the legal justification for the manner in which the oral swab was obtained from Mr. Workman, it could be reasonable for the Court to conclude that the decision below was "contradictory to law." It is important to note that the tripartite system, discussed *supra*, envisions the circuit court as the arbiter of law; however, review of a failure to address an issue of law has not been addressed in any reported Virginia decisions construing § 2.2-3006(B). The statute merely provides: "a party may appeal on the grounds that the determination is contradictory to law by filing a notice of appeal with the clerk of the circuit court in the jurisdiction in which the grievance arose." Va. Code § 2.2-3006(B).

Therefore, this Court finds that it may properly consider the Fourth Amendment issue not addressed by the hearing officer,[1] thus rendering the decision potentially "contradictory to law." *Cf. Old Dominion Univ. v. Birkmeyer*, 73 Va. Cir. 341, 343–44 (Norfolk 2007) (addressing claims that the hearing officer incorrectly applied the *McDonnell-Douglas* framework in an employment case). This conclusion is further affirmed by the fact that the standard of review is "contradictory to law," and not "an error of law"; logically, the Court is to examine the ultimate conclusion of the hearing officer, not merely the grounds for such conclusion. *See Edmonds v. Radford Univ.*, 56 Va. Cir. 414, 436 (Radford 2001).

### A. *History, Purpose, and Development of Fourth Amendment Jurisprudence*

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

The law of search and seizure has evolved and become more complex since the ratification of the Fourth Amendment in 1791, and now encompasses temporary detentions, *e.g., Terry v. Ohio*, 392 U.S. 1 (1968), searches incident to arrest, *e.g., United States v. Robinson*, 414 U.S. 218 (1973), protective sweeps, *e.g., Maryland v. Buie*, 494 U.S. 325 (1990), and searches under exigent circumstances, *e.g., Vale v. Louisiana*, 339 U.S. 30 (1970), as well as other searches under recognized exceptions to the

---

[1] However, one of the "Issues" presented in the hearing officer's January 7, 2010, opinion is: "Whether the Agency's discipline was consistent with law (e.g., free of unlawful discrimination) and policy. . . ."

requirement that a warrant be issued. Border searches, *e.g., United States v. Montoya de Hernandez*, 473 U.S. 531 (1985), airport searches, *e.g., United States v. Aukai*, 497 F.3d 955 (2007), and various school searches, *e.g., New Jersey v. T.L.O.*, 469 U.S. 325 (1985), all have further expanded authorities' ability to search people, places, and things, all at the expense of personal liberty and in ways not anticipated by the framers.

The Fourth Amendment does not, however, define "unreasonable" and its brevity and claimed ambiguity have led to much judicial interpretation. Indeed, it has never been in doubt that the courts are thus tasked as the guardians against arbitrary executions of government searches and seizures.

In accord, the Supreme Court of the United States has repeatedly held that warrantless searches "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

It is likewise beyond question that mandatory drug testing of public employees implicates the Fourth Amendment's protection against unreasonable searches and seizures, as such tests impinge upon employees' reasonable expectations of privacy. *See, e.g., National Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989); *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616–17 (1989). However, under certain circumstances, the government may conduct warrantless searches of such individuals, so long as such searches are based upon individualized suspicion, *see Vernonia Sch. Dist. 47j v. Acton*, 515 U.S. 646, 664–67 (1995); *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985), or where "special needs" are present. *Von Raab*, 489 U.S. at 665.

Thus, a reviewing court must examine the totality of a public employee search, "balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests." *Skinner*, 489 U.S. at 619 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)). "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* at 624. Overall, this is a "context-specific inquiry, examining closely the competing private and public interests advanced by the parties." *Chandler v. Miller*, 520 U.S. 305, 314 (citing *Von Raab*, 489 U.S. at 665–66, 668).

Those public sector employees who may be tested for drugs or alcohol pursuant to the above-discussed precedents generally hold safety-sensitive positions, such as armed police officers, front-line prison guards, and border agents. *See, e.g., id.* at 670 (employees working in drug interdiction or carrying a firearm); *Majewski v. Fischi*, 372 Fed. Appx. 300, 303–04 (3d Cir. 2010) (prison guards); *Carroll v. City of Westminster*, 233

F.3d 208, 211 (4th Cir. 2000) (armed police officers); *Taylor v. O'Grady*, 888 F.2d 1189, 1196 (7th Cir. 1989) (prison guards regularly contacting inmates); *McDonell v. Hunter*, 809 F.2d 1302, 1308 (8th Cir. 1987) (same as previous).

Drug testing of such employees is not without bounds, however; there are four categories of testing generally permitted in the absence of individualized suspicion: (1) pre-employment testing; (2) post-accident testing, *e.g., Skinner*, 489 U.S. at 630; (3) scheduled/routine periodic testing, *see, e.g., Von Raab*, 489 U.S. at 667, 672, n. 2.; and (4) randomized testing, *e.g., International Union v. Winters*, 385 F.2d 1003 (6th Cir. 2004) (correctional facility employees); *Thomson v. Marsh*, 884 F.2d 113 (4th Cir. 1989) (civilians employed at chemical weapons plant).

B. *The Oral Swab Test Administered to Workman Violated the Fourth Amendment, Rendering his Termination and the Final Determination Upholding it Contradictory to Law*

The first DOC drug test at issue in this case falls within the classification of randomized testing discussed above, as both parties agree; undeniably, prison is "a unique place fraught with serious security dangers." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The parties correspondingly agree that the initial drug test administered to Workman in January 2009 did not violate the Fourth Amendment. Only the constitutionality of the second test remains at issue.

It is uncontradicted that suspicionless testing not falling within one of the aforementioned categories would violate the Fourth Amendment. However, there exists the possibility that the second search is valid on the basis of reasonable suspicion, drawn from the first "negative, dilute" test.

The respondent, on brief, argues that the subsequent test was merely a constitutionally permissible "follow up" to the January negative dilute result, while petitioner maintains that there was no valid basis for the subsequent test. Given the dearth of Virginia law on the issue, the Court examined precedent from all jurisdictions to determine the appropriate standard.

The Eighth Circuit Court of Appeals addressed reasonable suspicion drug testing of prison employees, holding:

> Urinalysis testing within the institution's confines, other than uniformly or by systematic random selection of those employees so designated, may be made only on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences drawn from those facts in light of experience that the employee is then under the influence of drugs or alcohol or that the employee has used a controlled

substance within the twenty-four hour period prior to the required test.

*Hunter*, 809 F.2d at 1308.

Therefore, the issue remains as to whether the period of time between Workman's initial test and the Agency's "follow up," administered approximately three months later, is too long to justify the subsequent test under any circumstances. Clearly, this period is impermissibly long under the twenty-four hour standard of *Hunter*, attenuating the suspicion arising from the first test. *See id.* Given the particulars of this case and the general development of Fourth Amendment law regarding workplace drug testing, the Court finds that *Hunter* provides the relevant standard for testing on the basis of reasonable suspicion. While *Hunter* addresses urinalysis, the Court finds that the standard announced is equally applicable to the oral swab method at issue here.

The circumstances in this case may be analogized to the invalid execution of a search upon a "stale" warrant; the "negative, dilute" result would give rise to the reasonable suspicion necessary to conduct a subsequent search, but only for so long as the facts giving rise to the suspicion were reasonably related to the subsequent test. *See, e.g., Huff v. Commonwealth*, 213 Va. 710, 715–16 (1973) (discussing temporal requirements and the "stale" warrant); *see also United States v. Martinez,* 486 F.3d 855, 861 (5th Cir. 2007) (quoting *United States v. Gonzalez,* 190 F.3d 668, 672 (5th Cir. 1999)) (addressing "stale" information and reasonable suspicion). While there was no evidence presented in this case as to what period of time is reasonable for articulable suspicion to continue, three months seems far beyond the permissible realm, especially in light of the *Hunter* pronouncement.

Therefore, because the second test was not random and was not administered pursuant to any individualized suspicion, but ordered arbitrarily to clear the agency for purposes of an audit,[2] it fails any logical Fourth Amendment inquiry under the precedents discussed above. The final Agency decision to terminate Workman was therefore "contradictory to law" as it failed to account for the Fourth Amendment violation.

### IV. *Administrative Law Principles and the Decisions Below*

---

[2] "I was trying to clear us up for the audit. It was more just a cursory test him and put it in — we were going to get dinged on the audit anyway. I just wanted some follow-up. The policy actually states, if you send [sic] him out in January and he came back with a negative dilute, he should have immediately been sent back out for another test. And it should have been a urinalysis, but just to clear up for the audit, no. I just did the convenient way to do it. It was not planned, it was just, let's clear it up before we get dinged on it." (Hr'g Tr. 36–37, Jan. 4, 2010.)

Petitioner argues that despite the pronouncements of § 2.2-3006, the Court has jurisdiction to address whether the alleged failure of the DOC and DHRM to follow their own policies constitutes a violation of administrative law.

However, the Court will not entertain such inquiry, as principles of judicial efficiency in appellate review dictate that this Court decide the case "on the best and narrowest ground available from the record." *Biddison v. Virginia Marine Res. Comm'n,* 54 Va. App. 521, 531 (2009) (quoting *Kirby v. Commonwealth,* 50 Va. App. 691, 702, n. 2 (2007)); *see also Luginbyhl v. Commonwealth,* 48 Va. App. 58, 64 (2006) (en banc) (quoting *Air Courier Conference v. American Postal Workers Union,* 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

The arguments of the DOC surrounding the inability of the judiciary to check the self-regulation of the executive branch and the alleged violations of its own policies are issues that are more complex than can or need be covered in this opinion, especially considering the record presented. The additional argument that the violation of due process inherent in the oral swab methodology as compared to the primary urinalysis test utilized in the randomized test is likewise a broad inquiry and was not fully developed by the evidence. Furthermore, the petitioner abandoned his due process claims. *See supra.*

Finally, questions of when the DHRM and the Attorney General must approve published regulations as well as the authority of the DHRM to unilaterally declare a policy as a "supplemental policy" or modification of an approved existing policy not requiring the approval of the Attorney General are topics potentially beyond the scope of this Court's review and would further require additional evidence in the record.

Therefore, in light of the review permitted by § 2.2-3006(B) and because the Court reverses the final decision as contradictory to law on the Fourth Amendment ground, the Court declines to address any administrative law issues.

## V. *Conclusion*

Therefore, pursuant to Virginia Code § 2.2-3006(B) ("The court may affirm the decision or may reverse or modify the decision."), the Court reverses the Agency decision of July 8, 2010, finalized by the administrative review of September 17, 2010, and orders that the petitioner be reinstated, with back pay, and that he be awarded attorney's fees.