**Siobhan DONEGAN, Appellant**

v.

**Irene LIVINGSTON; Terre Feinberg; Frederick Mill.**

No. 12–3400.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 30, 2013.

Filed: June 24, 2013.

Before JORDAN, VANASKIE and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.

Plaintiff Siobhan Donegan appeals from the orders of the United States District Court for the Middle District of Pennsylvania granting the motion for summary judgment filed by Defendants Irene Livingston, Terre Feinberg, and Frederick Mill and denying Donegan's motion for reconsideration. We will affirm.

I.

Donegan worked as an instructional aide for the East Stroudsburg Area School District. She claimed that her constitutional rights were violated when she was de-

tained and subjected to alcohol testing at the Pocono Medical Center by Livingston, the Principal of the East Stroudsburg Elementary School, Mill, the School District's Chief of Police, and Feinberg, a police officer employed by the School District.

Appellees moved for summary judgment. The District Court granted their motion, dismissed with prejudice Donegan's federal constitutional claims for "unlawful arrest" and for "violation of freedom of association," and declined to exercise supplemental jurisdiction over her remaining state law claims. (A14.) Donegan filed a motion for reconsideration, which was denied by the District Court.

II.

We begin with Donegan's Fourth Amendment "unlawful arrest" claim.[1] "[W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665–66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616–20, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). Under this "special needs" approach, the government must prove that the search meets "a general test of reasonableness.'" *Wilcher v. City of Wilmington*, 139 F.3d 366, 374 (3d Cir. 1998))). "This analysis specifically consid-

---

1. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting a summary judgment motion, applying the same standard as the district court itself. *See, e.g., Doe v.*

*C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir.2008). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

ers: '(1) the nature of the privacy interest upon which the search intrudes; (2) the extent to which the search intrudes on the employee's privacy; and (3) the nature and immediacy of the governmental concern at issue, and the efficacy of the means employed by the government for meeting that concern.'" *Donegan v. Livingston,* 877 F.Supp.2d 212, 220–21 (M.D.Pa.2012) (quoting *Majewski v. Fischi,* 372 Fed. Appx. 300, 303 (3d Cir.2005)); *see also, e.g., Wilcher,* 139 F.3d at 374.

Applying these three factors, the District Court appropriately determined that the alcohol testing performed in this case satisfied the "reasonableness" test. We agree, for example, that Donegan's profession as an instructional aide in an elementary school "subjected her to a reduced expectation of privacy in her sobriety while at work." *Donegan,* 877 F.Supp.2d at 221. The District Court likewise did not commit reversible error by treating Donegan's alleged seizure as an inherent part of the testing process and concluding that such a seizure was based on reasonable suspicion (e.g., Livingston testified at her deposition that she smelled alcohol on Donegan) and lasted no longer than was necessary to complete the testing itself (e.g. approximately one hour elapsed from the time Mill was called to the school until Donegan returned from the hospital).

Citing to Justice Powell's concurring opinion in *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), Donegan contends that "it would appear that the Special Needs Exception cannot be applied where the state actors are police officers." (Appellant's Brief at 11.) As the District Court pointed out, the police officers in this case were not acting in any law enforcement capacity. They merely transported Donegan to the hospital at the direction of school administrators and then drove her back to the school after the alcohol testing was completed. Donegan claims that Mill conducted an investigation by asking her how she got to work that day and that she then would have been arrested if she tested over the legal limit for driving. Nevertheless, "Donegan testified that Chief Mill asked her how she got to work that day specifically in case she needed to be driven home." *Donegan,* 877 F.Supp.2d at 227–28 (citations omitted). Mill also explained in his deposition testimony that, even if alcohol had been detected, he had no intention of conducting an investigation into what he saw as a human resources issue.

According to Donegan, "the perp walk' of Appellant through the school with armed police officers violated Plaintiff's right to associate with the students at her place of employment in an effort to embarrass her in front of the faculty." (Appellant's Brief at 20 (emphasis omitted).) We conclude that the District Court appropriately rejected this "freedom of association" claim because, among other things, Donegan was not handcuffed or otherwise physically restrained and the police officers actually agreed "to delay a little bit until the school had cleared out so that [she] didn't have to be marched in front of everyone." (A44.)

### III.

For the foregoing reasons, we will affirm the orders of the District Court.